Teresa SCOTT, Plaintiff,

v.

**CITY OF ST. LOUIS, Defendant.**

**No. 4:00 CV 101 DDN.**

United States District Court,
E.D. Missouri,
Eastern Division.

Aug. 21, 2000.

Charles W. Bobinette, Partner, Uthoff and Graeber, St. Louis, MO, for plaintiff.

Nancy R. Kistler, St Louis Counselor, St. Louis, MO, for defendant.

### MEMORANDUM

NOCE, United States Magistrate Judge.

This matter is before the Court upon the motion of the plaintiff to stay the court's ruling on the motion of defendant for summary judgment (Doc. No. 16) and upon the objections of the defendant to the production of the written decision of the hearing officer in plaintiff's administrative appeal. The parties have consented to the exercise of plenary authority in this action by a United States Magistrate Judge under 28 U.S.C. § 636(c).

Plaintiff Teresa Scott brought this action under 42 U.S.C. § 1983 against the defendant City of St. Louis for relief from her termination from employment as a paramedic crew chief. Plaintiff alleges that in terminating her defendant violated her rights under the Fourteenth Amendment to the Constitution.

On January 14, 2000, defendant filed its notice that it had served on opposing counsel its motion for summary judgment, pursuant to E.D.Mo. Local Rule 4.05. In the notice to the Court and in other papers, defendant indicates that it is seeking a judgment of dismissal based upon the doctrines of res judicata and collateral estoppel. Defendant argues that the dispute between the parties was finally determined by the administrative decision of defendant's Civil Service Commis-sion, which followed an evidentiary hearing before a hearing officer.

The decision of the Civil Service Commission was based upon briefs and memoranda filed by the parties, documentary exhibits received into evidence by the hearing officer, and a report to the Commission by the hearing officer.[1] The record is undisputed that, in reaching its decision, the Civil Service Commission did not review a transcript or an audio or video recording of the hearing testimony taken by the hearing officer.

On March 14, 2000, plaintiff filed her motion to stay the Court's ruling on the motion for summary judgment pending completion of discovery. The bases for this motion included the allegations and arguments that plaintiff was denied a post deprivation hearing conducted by the members of the Civil Service Commission, that the Commission decided plaintiff's credibility without observing her demeanor and without reviewing a transcript or an audio recording of the hearing held before the Commission's hearing officer.

On March 15, 2000, plaintiff requested the production of several categories of documents relating to her appeal to the Civil Service Commission, including any report submitted by the hearing officer to the Commission. Defendant initially objected to producing any such report because it was not relevant to the issues raised by the motion for summary judgment. A hearing on the plaintiff's motion to stay was held on April 5, 2000.

At the hearing held on April 5, the Court stated that it believed that a report of the hearing officer would be relevant to a factual understanding the procedures used in the decision-making process of the Commission. Following the April 5, 2000, hearing the Court ordered defendant to produce to plaintiff, if it existed,

> the official report or other official document, if any, communicating to the Civil Service Commission the findings, conclusions, and recommendations of the hearing

1. *See* Privilege Log (Doc. No. 18), filed May 10, 2000, at footnote 1.

officer in the related administrative proceeding.

*See* Order (Doc. No. 14), issued April 5, 2000.

Thereafter, defendant moved for reconsideration of the April 5 order, arguing that the material sought was subject to the attorney-client privilege. To properly determine the application of this privilege the court ordered defendant to provide the relevant documents for in camera inspection and to file a privilege log describing the assertedly privileged document.

On May 10, 2000, as ordered, along with the Privilege Log filed by defendant contemporaneously in the public file of this action, defendant filed with the Court under seal for in camera inspection a copy of the written Report of Hearing Officer Joyce Savio Herleth, dated September 23, 1996, in the case of *In Re Appeal of Theresa Scott.* In its memorandum defendant argues that this document is protected by both the attorney-client privilege and by the deliberative process privilege. The Court believes that the subject document is not protected from discovery by plaintiff by either of these privileges.

 City of St. Louis Civil Service Rule XIII, Appeals, Hearings, Investigations & Reviews, provides in relevant part:

(d) *Decision of the Commission:* After hearing and/or reviewing and considering the evidence for and against the employee, the Commission shall prepare a report of its findings and conclusions of law, approving or disapproving the disciplinary action. In the case of approval, the disciplinary action shall stand as made by the appointing authority. In the case of disapproval or modification, the employee shall be restored to his or her former status or the action shall be modified as ordered by the Commission. In reviewing any appeal made under these rules, the Commission may in its discretion adjudicate the appeal based on written submissions or engage a hearing officer for the purpose of conducting a hearing with regard to said appeal. Said hearing officer shall be empowered to do all things the Commission is authorized to do in connection with such a hearing,

except for rendering a decision on the appeal at issue.

*See* Exh. B at 3, filed May 10, 2000.

Defendant shows with the supporting written agreement that the hearing officer is a licensed attorney, retained by the Civil Service Commission to do the following:

1. To conduct hearings relative to appeals from permanent Civil Service employees from disciplinary actions imposed by appointing authorities.

2. To assure that a record of the proceedings of said hearings is prepared and furnished to the Civil Service Commission for review and consideration.

3. To advise the Civil Service Commission of her recommendations toward adjudication of said appeals.

*See* Exh. B, filed May 10, 2000.

*The attorney-client privilege.*

 When a plaintiff sues a defendant in federal district court for a violation of federal law, the federal law of privilege applies. *See* Fed.R.Evid. 501; *Hollins v. Powell,* 773 F.2d 191, 196 (8th Cir.1985), *cert. denied,* 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986); *see also Texaco Puerto Rico, Inc. v. Dept. of Consumer Affairs,* 60 F.3d 867, 883 (1st Cir.1995); *Garner v. Wolfinbarger,* 430 F.2d 1093, 1097 (5th Cir.1970). Proposed Federal Rule of Evidence 503, also referred to as Supreme Court Standard 503, generally describes the federal common law attorney-client privilege. *In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 916 n. 3 (8th Cir.), *cert. denied,* 521 U.S. 1105, 117 S.Ct. 2482, 138 L.Ed.2d 991 (1997); *In re Bieter Company,* 16 F.3d 929, 935 (8th Cir. 1994). Standard 503 provides, in relevant part:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client ... between himself ... and his lawyer ....

*Id.* (quoting Supreme Court Standard 503(b)).

The privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable [her] to give sound and informed advice." [*Upjohn Co. v. United States*, 449 U.S. 383, at 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)]. The purpose of the privilege is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 389, 101 S.Ct. 677.

*Texaco Puerto Rico, Inc.*, 60 F.3d at 883.

In the case at bar, defendant considers itself, through its Civil Service Commission, to be the client and the hearing officer to be its attorney.

Without disclosing the substantive content of the hearing officer's report, the Court notes that it is a formal document, 26 pages in length. The title page bears the style of the appeal of plaintiff to the Civil Service Commission and characterizes the report as a "decision" ("Date of Decision September 23, 1996"). The document's contents are divided into eight sections: I. Background (p. 3), II. List of Exhibits (pp. 3–4), III. Summary Position of the Parties (p. 4), IV. Summary of the Evidence (pp. 4–20), V. Discussion and Recommendations (pp. 20–24), VI. Suggested Finding[s] of Fact (pp. 24–25), VII. Suggested Conclusions of Law (pp. 25–26), and VIII. Recommended Decision (p. 26). The document is formally signed by the hearing officer and dated September 23, 1996.

Sections I through VI of the report appear to convey to the Commission an objective description of the procedural history of the proceedings and an objective rendition of the evidence adduced during the hearing. Such fact-gathering, consistent with the record preparation duty imposed on the hearing officer by her employment agreement with the Commission, is not for the purpose of providing legal advice, but rather informs the Civil Service Commission of the relevant evidence so that it can perform its governmental function. *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D.Minn.1986).

Sections VII and VIII of the hearing officer's report, *i.e.*, the Suggested Conclusions of Law and the Recommended Decision, respectively, convey the hearing officer's legal opinions on the relative rights of the parties to the dispute. These two sections are not protected by the attorney-client privilege, because, in the broad sense, the function of the hearing officer was not to provide legal services to the Civil Service Commission.

In *Texaco Puerto Rico, Inc.*, 60 F.3d 867, the attorney-client privilege and the deliberative process privilege were held inapplicable to correspondence between the Puerto Rico Department of Consumer Affairs (DACO) and its outside, retained counsel in its lengthy battle with gasoline wholesalers in the regulation of gasoline prices. Without going into the specific underlying facts, this Court finds the following approving discussion of the district court's ruling instructive:

> .... The [district] court found as a fact, after in camera inspection of the disputed documents, that outside counsel had become an integral part of the adjudicative decisionmaking process. Based on this factual finding, the court ruled that the attorney-client privilege did not apply because, when an administrative agency engaged in an adjudicative function delegates its responsibilities to outside counsel, then the work product generated by the firm is part of the adjudicative process itself and, hence, beyond the reach of the attorney-client privilege.

60 F.3d at 884. The Court of Appeals expressed its own conclusions thus:

> .... The attorney-client privilege attaches only when the attorney acts in that capacity..., *United States v. United Shoe Mach. Corp.*, 89 F.Supp. 357, 358–59 (D.Mass. 1950). Here, the district court found, in substance, that DACO delegated policymaking authority to its outside counsel to such an extent that counsel ceased to function as lawyers and began to function as regulators. Therefore, DACO could not invoke the attorney-client privilege in connection with the documents at issue.
>
> We cannot term this finding clearly erroneous. The record shows that DACO's

counsel had, in fact, drafted remedial orders that DACO adopted verbatim; that Dr. Logan, an employee of DACO's counsel, was the "putative author of the [1989] 13–cent regulation," ... and that counsel had developed adjudicative data that the agency later reissued as its own.

60 F.3d at 884. Thus, DACO's counsel was held to have participated in the governmental activities of regulating and adjudicating, and did not act to provide legal advice to a client, because (1) DACO had delegated its adjudicative responsibilities to counsel; (2) counsel had drafted remedial orders that DACO adopted verbatim; and (3) counsel had developed adjudicative data that DACO later reissued as its own. The similarities of the relationships between DACO and its counsel and between the Civil Service Commission and its hearing officer in plaintiff's case are striking.

In plaintiff's case, the Civil Service Rules empowered the Commission to authorize the hearing officer to do anything the Commission could do in the appeal determining process, except make the final decision on the appeal. In its final decision, adopted by motion and vote at its meeting of November 13, 1996, the Commission recognized that the Commission's hearing of the appeal was before the hearing officer. The Commission's decision further recited that at the conclusion of the hearing before the hearing officer, the "matter [was] taken under advisement by the Civil Service Commission for its decision."

As in *Texaco Puerto Rico, Inc.*, the hearing officer gathered adjudicative data necessary for the Commission to decide plaintiff's appeal. Among the findings of fact adopted by the Commission in its written, public decision is Finding No. X, "Appellant's testimony was not credible." It is undisputed that the Commission rendered its final decision without reviewing any written transcript, audio record, or video record of the oral testimony, including plaintiff's, adduced at the hearing.

The conclusion is inescapable that the written decision or report of the hearing officer in plaintiff's case was an integral component of the Civil Service Commission's adjudicative process. It was not merely the rendering of legal service or advice by an attorney to her client protected from public disclosure by the attorney-client privilege.

### The deliberative process privilege.

■ Defendant would keep the hearing officer's entire decision or report confidential under the governmental deliberative process privilege. Again, the Court finds instructive the opinion of the First Circuit in *Texaco Puerto Rico, Inc.*

.... The deliberative process privilege "shields from public disclosure confidential inter-agency memoranda on matters of law or policy." .... The privilege rests on a policy of affording reasonable security to the decisionmaking process within a government agency....

The Supreme Court has restricted the deliberative process privilege to materials that are both predecisional and deliberative.... In other words, to qualify for the privilege, a document must be (1) predecisional, that is, "antecedent to the adoption of agency policy," and (2) deliberative, that is, actually "related to the process by which policies are formulated." ... Because the deliberative process privilege is restricted to the intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process, factual statements or post-decisional documents explaining or justifying a decision already made are not shielded.

Even if a document satisfies the criteria for protection under the deliberative process privilege, nondisclosure is not automatic. The privilege "is a qualified one," .... Thus, in determining whether to honor an assertion of the privilege, a court must weigh competing interests....

At bottom, then, the deliberative process privilege is "a discretionary one." ... In deciding how to exercise its discretion, an inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government....

60 F.3d at 884–85 (internal citations omitted). Other factors to be considered in the exercise of the Court's discretion include the rele-

vance of the evidence, the availability of other evidence, the government's role in the case, and the extent to which disclosure would hinder frank and independent discussion of the pending decision. *E.E.O.C. v. The Pasta House Co.,* 1996 WL 153959 at *1 (E.D.Mo.1996).

In the case at bar, there is no doubt that the decision of the hearing officer was an intra-agency, predecisional communication. The hearing officer is a subordinate of the Civil Service Commission and her decision provided a basis of the Commission's final decision. As set out above, most of her decision is an objective rendition of evidence received at the hearing and a statement of the facts the hearing officer found from that evidence. Such purely factual portions of the decisional document generally are not protected by the deliberative process privilege. *National Courier Assn. v. Bd. of Governors of Fed. Res. System,* 516 F.2d 1229, 1242 (D.C.Cir.1975); *E.E.O.C. v. The Pasta House Co.,* 1996 WL 153959 at *1.

The hearing officer's conclusions of law and recommended decision clearly are deliberative, being closely related to the Commission's ultimate decision in plaintiff's case. *Texaco Puerto Rico, Inc.,* 60 F.3d at 884.

Nevertheless, the Court has determined in its discretion that the hearing officer's decision ought not be kept confidential under the deliberative process privilege. The interests of both litigants in this case and the public at large call for disclosure. In this judicial action for review of an administrative agency's decision, plaintiff has challenged the constitutionality of the process by which the final decision was made. Disclosure would serve the plaintiff's interest in pretrial preparation. Disclosure also would serve the public's interest and the defendant's interest in assessing the quality of the decisions of public agencies. No legitimate governmental interest is served by keeping the decision confidential. The role of the report of the hearing officer in the Commission's final decision ought to be disclosed in the interest of good government. The employees and the employment appointing authorities of defendant of St. Louis are all potential litigants before the Civil Service Commission and all

have a great interest in the accuracy and the integrity of the factual bases of the Commission's final decisions. Further, the need for this evidence cannot be satisfied by other evidence. The hearing officer's decision is the operative document to be examined.

The case authorities urged by defendant are not persuasive. In *National Courier Ass'n.,* 516 F.2d 1229, the subject documents were memoranda addressed to the Federal Reserve Board by its Legal Division and its Research and Statistics Division. The position of hearing officer of the Civil Service Commission is not that of a mere staff member. Rather, the record indicates that the hearing officer is authorized to exercise the authority of the Commission itself, short of rendering the final decision.

In *Montrose Chemical Corp. of Calif. v. Train,* 491 F.2d 63 (D.C.Cir.1974), the documents at issue were prepared by the staff of the Environmental Protection Agency to summarize and to analyze evidence adduced before a hearing examiner. The authors of these documents were not the persons who heard the evidence.

In *T.S.C. Motor Freight Lines, Inc. v. United States,* 186 F.Supp. 777 (S.D.Tx. 1960), the documents were authored by Interstate Commerce Commission attorney-advisors who did not participate in the functions of the Commission "nor do they take part in the proceedings before the Hearing Examiner." 186 F.Supp. at 787.

In the case at bar, the decision of the hearing officer played an integral and substantial role in the final decisionmaking by the Commission. The deliberative process privilege ought not keep it from disclosure.

For these reasons, the motion of the plaintiff to stay must be sustained and the objections of the defendant to production of the hearing officer's report must be overruled. An appropriate Order is issued herewith.