State of **WYOMING Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE; et. al., Defendant,**

**Wyoming Outdoor Council, et. al., Defendant–Intervenors.**

No. 01–CV–0086–B.

United States District Court, D. Wyoming.

Oct. 17, 2002.

---

Thomas John Davidson, Magdaline M. Allely, Wyoming Atty. Gen., Cheyenne, WY, Harriet M. Hageman, Kara Brighton, Hageman & Brighton, Cheyenne, WY, for Plaintiff.

Carol A. Statkus, Asst. U.S. Atty., U.S. Attorney's Office, Cheyenne, WY, Andrea L. Berlowe, Barclay T. Samford, Dept. of Justice, Environment and Natural Resources Div., Washington, DC, Douglas L. Honnold, Timothy J. Preso, Earthjustice Legal Defense Fund, Bozeman, MT, James S. Angell, Earthjustice Legal Devense Fund, Denver, CO, Steve Jones, Jackson, WY, for Defendants.

## ORDER

BRIMMER, District Judge.

This case arises from the United State Forest Service's promulgation of several "roadless" rules. The matter is currently before the Court on: (1) Plaintiff State of Wyoming's Motion to Supplement the Administrative Record; (2) Plaintiff State of Wyoming's Motion to Compel Production of Documents Withheld on an Improper Claim of Privilege;[1] and (3) Defendant–

1. Plaintiff's Motion to Supplement and Motion to Compel will be considered together because any documents found to be withheld on an improper claim of privilege will be supplemented into the Administrative Records.

Intervenors' Fed.R.Civ.P. 72(a) Objections to the Magistrate's Order Ruling on Defendant–Intervenors' Motion for Protective Order ("Motion to Reconsider"). Upon reading the briefs, hearing oral argument, conducting *in camera* inspection of all documents asserted as privileged, being fully advised of the premises, and in accordance with the Court's oral findings and ruling from the bench at the hearing in this matter, the Court **FINDS** and **ORDERS** as follows:

### Statement of the Parties and Jurisdiction

Plaintiff State of Wyoming is a sovereign State of the United States and has brought this suit in its own right and on behalf of its citizens *parens patriae.*

Defendant United States Department of Agriculture ("USDA") is a department of the Executive Branch of the United States government. The USDA is responsible for overseeing the activities of the United States Forest Service ("USFS"). The USFS is an agency of the USDA and is charged with the administration of the National Forests, including several National Forests within the State of Wyoming. Defendant Ann M. Veneman is the Secretary of Agriculture and has been sued in her official capacity for the actions of her predecessor, former Secretary of Agriculture Daniel R. Glickman, who signed the challenged roadless area and planning rules at issue. The USFS is subject to the direction of Secretary Veneman in her official capacity. Defendant Dale N. Bosworth is Chief of the USFS and has been sued in his official capacity for the actions of his predecessor, former Chief Michael Dombeck, who signed the challenged roadless policy and rules. Chief Bosworth is responsible for the operations and activities of the USFS on National Forest System lands. These Defendants will be collectively referred to as the "Federal Defendants."

The intervenors are environmental organizations that have advocated for the protection of roadless areas before Congress, state legislatures, and the Forest Service for a number of years. Parties that have intervened in this action are the Wyoming Outdoor Council, Wilderness Society, Sierra Club, Biodiversity Associates, Pacific Rivers Council, Natural Resources Defense Council, Defenders of Wildlife, and National Audubon Society (collectively "Defendant–Intervenors"). The Defendant–Intervenors were active participants in the rulemaking process leading to the promulgation of the rules and regulations challenged by the State of Wyoming.

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper with this Court pursuant to 28 U.S.C. § 1391(b), (e).

### Background

Originally, this action came before the Court on the Plaintiff's claims for (1) declaratory and injunctive relief, and (2) for judicial review of agency actions. Plaintiff's Complaint asserts that the Defendants have embarked on an illegal scheme to permanently prevent road and trail construction and reconstruction in the national forests thereby restricting access to those forests. Plaintiff further asserts that various final agency actions limiting the construction of roads and trails in national forests located in Wyoming impact the State negatively and violate federal law. Plaintiff seeks judicial review of the agency actions limiting road construction in the State. Plaintiff's Complaint alleges that the Defendants have violated the: (1) National Environmental Policy Act ("NEPA") (Count I); (2) National Forest Management Act ("NFMA") (Count II); (3) Wilderness Act and the Wyoming Wilderness Act (Count III); (4) Multiple Use Sustained Yield Act ("MUSYA") (Count IV);

(5) National Historic Preservation Act ("NHPA") (Count V); (6) Federal Advisory Committee Act ("FACA") (Count VI); (7) Regulatory Flexibility Act (Count VII); and (8) Administrative Procedure Act ("APA") (Count VIII).

During the final year of President Clinton's second term of office, USFS Chief Michael Dombeck announced: (1) the Roadless Area Conservation Rule, 36 C.F.R. § 294.1 *et seq.* ("Roadless Rule"); (2) the National Forest System Land and Management Planning Rule, 36 C.F.R. § 219.1 *et seq.* ("Planning Rule"); (3) revisions to the Forest Transportation System Policy ("Transportation Policy"); and (4) revisions to the National Forest System Road Management Rule, 36 C.F.R. § 212.1 *et seq.* ("Road Management Rule"). The Plaintiff's Complaint centers around these three rules and the transportation policy, therefore, a brief overview of each will be provided.

### A. Roadless Rule

The Roadless Rule includes approximately 3.25 million acres of National Forest lands within Wyoming, which accounts for 37 percent of Wyoming's National Forest lands.[2] The final Roadless Rule covered 58.5 million acres of inventoried roadless lands on National Forests and prevented road construction (or reconstruction) and commercial timber harvest. 66 Fed.Reg. 3,244.

On October 13, 1999 President Clinton directed the Forest Service to develop and prepare, for public comment, regulations to end road construction and protect inventoried and un-inventoried roadless areas across the entire National Forest System.

On October 19, 1999, in response to the President's directives, the Forest Service issued a Notice of Intent ("NOI") to prepare an Environmental Impact Statement ("EIS"). The NOI public comment period occurred during the next sixty days. Notwithstanding a number of requests to extend the comment period by interested parties, including the governors of affected states, the comment period was not modified.

During this public comment period, the Forest Service conducted over 180 public meetings across the nation regarding the Roadless Rule. In Wyoming, public scoping meetings were held in (1) Casper and Cody on December 13, 1999; (2) Riverton and Sheridan on December 14, 1999; and (3) Jackson and Laramie on December 15, 1999. During this time, the Governor of Wyoming requested that the USDA grant Wyoming cooperative agency status. This request was never acted upon.

On May 9, 2000, the USFS released: (1) its Draft Environmental Impact Statement ("DEIS") for the Roadless Rule; and (2) the Proposed Roadless Rule, which appeared in the Federal Register on May 10, 2000. *See* 65 Fed.Reg. 30276 (2000). The public comment period for the proposed rule and DEIS was sixty days. After rejecting the requests to extend the public comment period,[3] the Forest Service published a Notice of Availability for the Final EIS ("FEIS") on November 17, 2000. The Roadless Rule was signed on January 5, 2001 and the Roadless Rule was to become effective on March 13, 2001. However, President Bush's administration postponed implementation of the Roadless Rule until May 12, 2001.

---

**2.** The Planning Rule, Transportation Policy, and Road Management Rule impact National Forest lands within the State of Wyoming. Plaintiff claims that the Roadless Rule impacts thousands of acres of Wyoming land, including school and privately owned lands.

**3.** The USFS received over one million comments on the proposed rule and DEIS, including comments from the State of Wyoming.

### B. *Planning Rule*

In 1989, prior to initiating revisions to each National Forest Plan pursuant to the NFMA, the Forest Service conducted a comprehensive overview of its land management planning process. In 1997, the Secretary of Agriculture appointed a new "Committee of Scientists" to review the Forest Service Planning process and offer suggestions. The Forest Service published the proposed rule relating to the land management process on October 5, 1999, followed by a ninety day public comment period. That period was extended twice and closed on February 10, 2000. The Forest Services's final Planning Rule was issued on November 9, 2000. Plaintiff claims the Planning Rule subordinates all uses of the National Forests to the principle of ecological sustainability and fundamentally changes the mission of the USFS.

### C. *Transportation Policy*

On January 28, 1998, the USFS published an advanced Notice of Proposed Rulemaking on management of the forest transportation system. The Transportation Policy placed an eighteen month moratorium on construction and reconstruction of roads in "roadless areas," which had been re-defined from areas with 5,000 acres or more to include areas with 1,000 acres or more. On February 12, 1999, the Forest Service published the Interim Rules regarding suspension of construction and reconstruction in roadless areas.[4]

On December 14, 2001, two new Interim Directives were issued by the USFS Chief regarding the Transportation Policy of January 2001. The Directives (1) remove the interim requirements of the Transportation Policy for entering inventoried roadless areas, (2) grant local decisionmakers discretion for road analysis, (3) re-dele-gates authority to approve exceptions to a forest-scale roads analysis from the Chief to various Regional Foresters, and (4) includes a summary of the various Interim Directives related to the Transportation Policy or the Roadless Area Conservation rules since their issuance in January of 2001.

### D. *Road Management Rule*

On March 3, 2000, the Forest Service published a proposed rule regarding road management within the National Forest System. The final Road Management Rule was published on January 12, 2001. Plaintiff claims that the Road Management Rule constitutes a significant shift in road management policy that is designed to remove emphasis on transportation development and road construction in the National Forest System.

### *Procedural Background*

On May 18, 2001, Plaintiff filed its Complaint against the Federal Defendants. The Federal Defendants filed an Answer on July 17, 2001. On September 4, 2001 the Defendant–Intervenors filed a motion to intervene. On January 18, 2002, this Court granted the motion to intervene and denied the Federal Defendants' Motion to Stay Proceedings pending resolution of a similar matter before the Ninth Circuit Court of Appeals. On February 15 and March 15, 2002, the Federal Defendants and Defendant–Intervenors respectively filed motions for partial judgment on the pleadings seeking to dismiss Plaintiff's FACA claim. Ruling from the bench on April 16, 2002, this Court denied both Defendants' motions for partial judgment on the pleadings, which was re-stated in a written order on May 9, 2002.

---

**4.** Although the eighteen month moratorium was initially codified at 36 C.F.R. § 212.13, the Forest Service subsequently classified the Transportation Policy as a final administrative policy implemented to the Forest Service Manual as § 7712.16.

As a result, United States Magistrate Judge William C. Beaman, in the fourth scheduling conference, set two separate schedules: (1) a schedule for the Plaintiff's remaining claims for judicial review of agency actions, which are limited to review of the Administrative Records; and (2) a schedule for Plaintiff's FACA claim, which is subject to discovery beyond the Administrative Records.

### A. Judicial Review of Agency Action Claims

On July 10, 2002, Plaintiff filed a Motion to Supplement Administrative Records and a Motion to Compel Production of Documents Withheld on an Improper Claim of Privilege. The Federal Defendants responded to this Motion to Supplement the Administrative Records on July 19, 2002. After hearing oral argument on August 15, 2002, this Court took Plaintiff's Motion to Supplement the Administrative Records under advisement and ordered the Federal Defendants to provide the Court with all documents the Plaintiff claimed were improperly withheld on a claim of privilege for *in camera* inspection. The Federal Defendants lodged those documents with this Court on September 4, 2002.

### B. The FACA Claim

After surviving the Federal Defendants' and Defendant–Intervenors' Motions for Partial Judgment on the Pleadings on the FACA claim, Plaintiff noticed depositions for several of the Defendant–Intervenors and numerous former and present federal officials. On June 14, 2002, Defendant–Intervenors filed a Motion for Protective Order seeking an order protecting them from producing documents requested in the deposition notices and limiting Plaintiff's inquiry at the deposition to "what was said by the government to the deponent and by the deponent to the government when they communicated directly regarding the four National Forest rules that

Wyoming challenged." By order dated July 3, 2002, United States Magistrate Judge Beaman Granted in Part and Denied in Part Defendant–Intervenors' Motion for Protective Order. On July 17, 2002, Defendant–Intervenors appealed that Order to this Court by filing objections to the Magistrate's Order pursuant to Fed.R.Civ.P. 72(a).

### Analysis

I. Plaintiff State of Wyoming's Motion to Supplement Administrative Records and Motion to Compel Production of Documents Withheld on an Improper Claim of Privilege.

### A. Judicial Review of Agency Action

Plaintiff is seeking judicial review of four interrelated final agency actions taken by the USDA; specifically, Plaintiff seeks declaratory and injunctive relief to enjoin the implementation of and set aside: (1) adoption of the Roadless Area Conservation Final Rule, 36 C.F.R. § 294.1 *et seq.;* (2) revisions to the National Forest Management Act Planning Regulations, 36 C.F.R. § 219.1 *et seq.;* (3) revisions to the Forest Transportation System Final Administrative Policy; and (4) revisions to the National Forest System Road Management Rule, 36 C.F.R. § 212.1 *et seq..* Therefore, the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.,* governs judicial review of the Federal Defendants' actions.

 The APA provides that a person who suffers a legal wrong because of an agency action is entitled to judicial review. 5 U.S.C. § 702. Rather than *de novo* review, the APA provides for judicial review of the administrative record. *Id.* § 706; *Franklin Savings Ass'n v. Dir. of Office of Thrift Supervision,* 934 F.2d 1127, 1137 (10th Cir.1991). However, before the district court can review the administrative

record, it "must have before it the 'whole record' on which the agency acted." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir.1993). The "whole record" consists of "all documents and materials directly or indirectly considered by the agency." *Id.; Ariz. Rehab. Hosp., Inc. v. Shalala*, 185 F.R.D. 263, 266 (D.Ariz.1998) (noting "the whole record for purposes of 5 U.S.C. § 706 'includes everything that was before the Agency pertaining to the merits of its decision.'" *quoting Portland Audubon Society v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993)).

 The administrative record is entitled to a presumption of regularity. *Bar MK Ranches*, 994 F.2d at 740. Nevertheless, "[w]hen a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question." *Id.* In this context, "discovery" connotes, among other things, a plaintiff's claim of entitlement to production of certain documents and an agency's claim of privilege. *See e.g., Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579–80 (10th Cir.1994) (concluding the district court erred in allowing discovery and motions for summary judgment when reviewing agency action under the APA). Accordingly, a plaintiff is entitled to supplement the administrative record with documents wrongfully withheld, or inadvertently omitted, from the record by an administrative agency. *Hannon v. Clark*, Civ. No. 98–K–1766, 2000 U.S. Dist. LEXIS 18647, at *28 (D.Colo.2000).

 In addition, there are limited circumstances when a district court may consider material not included in the administrative record. Those limited circumstances arise: (1) where the administrative record fails to disclose the factors considered by the agency; (2) when necessary for background information; (3) when necessary to determine whether the agency considered all relevant factors including evidence contrary to the agency's position; or (4) where necessary to explain technical terms or complex subject matter involved in the action. *Franklin Savings Ass'n*, 934 F.2d at 1137–38.

### B. *Attorney–Client Privilege*

Plaintiff argues that the Administrative Records should be supplemented to include, among other things, documents that were removed from the Administrative Records based upon improper claims of attorney-client privilege. The Federal Defendants respond that the documents it removed are protected from disclosure by the attorney-client privilege and work product doctrine.

### 1. Attorney–Client Privilege and Government Agencies

 Unfortunately, disputes involving improper claims of attorney-client privilege by governmental agencies have been ubiquitous in recent times. In federal question cases, a district court will rely on the federal common law to determine whether the privilege applies. *Sprague v. Thorn Americas*, 129 F.3d 1355, 1368–69 (10th Cir.1997); Fed.R.Evid. 501.

 The attorney-client privilege is strictly construed because it obstructs the truth-finding process. *In re Foster*, 188 F.3d 1259, 1265 (10th Cir.1999). A district court will not construe the privilege more broadly than necessary to effectuate the privilege's purpose. *Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 196 (D.Kan.1993). The purpose of the attorney-client privilege is to: (1) "encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice[,]" *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66

L.Ed.2d 584 (1981); and (2) allow the attorney to obtain full disclosure of facts that relate to the reasons the client is seeking representation. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

▆▆▆ The attorney-client privilege protects confidential communications between an attorney and client. *Id.* at 390, 101 S.Ct. 677. The party asserting the attorney-client privilege has the burden of proving that the privilege is warranted under the circumstances and has not been waived. *Lifewise Master Funding v. Telebank,* 206 F.R.D. 298, 303 (D.Utah 2002) *citing In re Foster,* 188 F.3d at 1264. To carry this burden, the party asserting the privilege must establish: (1) the holder of the privilege is a client; (2) the person to whom the communication was made is an attorney; (3) the communication was made in connection with the person's role as an attorney; (4) the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers (i.e. was confidential), for the purpose of securing legal advice, services, or assistance; and (5) the privilege has not been waived. *In re Grand Jury 90–1,* 758 F.Supp. 1411, 1413 (D.Colo.1991); *Doebele v. Sprint Corp.,* No. 00–2053–KHV, 2001 WL 1718259, at *3 (D.Kan. Jan. 21, 2002), 2002 U.S. Dist. LEXIS 1007, *9. As applied to governmental agencies, federal courts have begun to define and explain the contours of these elements of the attorney-client privilege.

a. Government Agencies as "Clients" and Staff Lawyers as "Attorneys" (Elements # 1 and 2)

▆▆▆ A government agency, like a business organization, may assert the attorney-client privilege. *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 863 (D.C.Cir.1980). Hence, "[i]n the governmental context, the client may be the

agency and the attorney may be the agency lawyer." *In re Lindsey,* 148 F.3d 1100, 1104 (D.C. Cir.1998) (internal quotations and citations omitted).

b. Communications Made by Agency Attorneys (Element # 3)

▆▆▆ The attorney-client privilege only attaches when an attorney acts in a legal capacity. *Andritz Sprout–Bauer v. Beazer East,* 174 F.R.D. 609, 633 (M.D.Penn.1997) (noting that in the corporate context, communications made by in-house counsel functioning in the role of business advisor or corporate administrator are not privileged). Attorneys for governmental agencies sometimes wear more than one hat; that is, some attorneys function in the capacity of an administrator or regulator in lieu of, or in addition to, acting in a legal capacity. Recognizing this, federal courts have held that when an attorney for a governmental agency has ceased to function as an attorney and began to function as a regulator or administrator, the communications are no longer protected by the attorney-client privilege. *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs,* 60 F.3d 867, 884 (1st Cir.1995) *citing Mobil Oil Corp. v. Dep't of Energy,* 102 F.R.D. 1, 9–10 (N.D.N.Y.1983); *Coastal Corp. v. Duncan,* 86 F.R.D. 514, 521 (D.Del.1980); *Shalala,* 185 F.R.D. at 270 (noting communications were protected because the lawyers were "giving legal opinions regarding the proposed regulation change, i.e., the lawyers [were] not acting as administrators"); *Scott v. City of St. Louis,* 196 F.R.D. 551, 555 (E.D.Mo.2000).

c. Confidential Communications (Element # 4)

▆▆▆ A communication between an attorney and an agency must be confidential in order to be protected by the attorney-client privilege. *Coastal States Gas*

*Corp.*, 617 F.2d at 863. The communication must have been intended to be confidential at the time it was ·made and that confidentiality must have been maintained since the disclosure. *Id.* A communication is "confidential" if it is communicated: (1) with the intention that the attorney will not disclose its contents; and (2) for the purpose of securing legal advice or services. *Eugene Burger Mgmt. Corp. v. United States Dep't of Housing and Urban Dev.*, 192 F.R.D. 1, 5 (D.D.C.1999).

In *Coastal States Gas Corp.*, the governmental agency argued that the circulation of documents within the "confines of the agency" did not defeat the attorney-client privilege. 617 F.2d at 865. The D.C. Circuit rejected this "intra-agency" assertion of confidentiality because it would grant the agency a "far too broad" attorney-client privilege. *Id.* Rather, the D.C. Circuit explained:

> When the client is by nature a group, as is true of both the government and corporations, the courts have agreed that the privilege should not be defeated by some limited circulation beyond the attorney and the person within the group who requested the advice. The test ... is whether the agency is able to demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members "of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication." The purpose of the privilege is limited to protection of confidential facts. If facts have been made known to persons other than those who need to know them, there is nothing on which to base a conclusion that they are confidential.

*Id. quoting Mead Data Central v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 n. 24 (D.C.Cir.1977); *see also Scott Paper Co. v. United States*, 943 F.Supp. 489, 499–500

(E.D.Pa.1996). It is an error for the agency to assume "that the requirement of client communicated confidentiality is satisfied merely because the documents are communications between a client and attorney." *Maine v. U.S. D.O.I.*, 298 F.3d 60, 71–72 (1st Cir.2002) (holding DOI was not entitled to attorney-client privilege because its documents were not maintained in a confidential manner).

 In sum, when a governmental agency is asserting the attorney-client privilege, the confidentiality element will be satisfied only if the documents in question were circulated among those agency employees who are authorized to speak on the matter dealt with in the documents; if circulated to a larger group of individuals, the privilege does not apply because the agency did not maintain the confidentiality of the information. *Lacefield v. United States*, No. 92–N–1680, 1993 WL 268392, *3 (D.Colo. March 10, 1993), 1993 U.S. Dist. LEXIS 4521, *9.

d. Waiver (Element # 5)

Federal courts have long recognized that even if a communication was made between an attorney and client in confidence, the privilege may be vitiated for a number of reasons. As a result, "[a]n important element of the attorney-client privilege is showing that there has not been a waiver." *KN Energy, Inc. v. Sinclair Oil Corp.*, No. 93–CV–0080B, 1995 U.S. Dist. LEXIS 15658, *7 (D.Wyo.1995). The attorney-client privilege can be waived a number a ways, which do not need to be re-stated here; however, it should be noted that in the context of a governmental agency, like in the corporate context, privileged information should be kept in a highly confidential manner and disclosed only to those persons who need to know the information. *Upjohn Co. v. United States*, 449 U.S. 383, 394–95, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (noting the subpoenaed

questionnaires in the case were kept highly confidential and disclosed only to the company's general counsel and outside counsel).

## 2. Work Product Doctrine

The Federal Defendants have asserted that some of the documents in question were withheld on the basis of the work product doctrine. The work product doctrine is distinct from the attorney-client privilege. *In re Foster*, 188 F.3d at 1272.

■ The work product doctrine protects the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney concerning the litigation. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947).[5] The party asserting the privilege has the burden of showing that it is applicable. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995). A blanket claim as to the applicability of the work product doctrine will not satisfy this burden. *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D.Kan.2000).

■ To establish that the work product doctrine applies, the party asserting the protection must show: (1) the material sought to be protected are documents or tangible things; (2) prepared in anticipation of litigation; (3) by or for a party or representative of that party. *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D.Kan.2000). The work product doctrine is not an absolute bar to discovery and an attorney's work product can be produced if: (1) the discovering party can demonstrate substantial need for the material; and (2) the discovering party is unable to obtain the substantial equivalent of the material by other means without undue hardship. *Frontier Refining Inc. v. Gorman–Rupp Co.*, 136 F.3d 695, 703 (10th Cir.1998).

## C. *Application*

Plaintiff seeks to supplement the four Administrative Records in this case with several different documents.

### 1. *Roadless Rule Administrative Record*

Plaintiff seeks to supplement the Roadless Rule Administrative Record with: (1) "documents related to the Roadless Initiative that were initially removed from the Administrative Record on the belief they post-dated the Final Rule" ("Exhibit 7 CD ROMs");[6] (2) "documents that should have been included as part of the Roadless Initiative Administrative Record but were not" ("Exhibit 4 Documents");[7] and (3)

---

**5.** Fed.R.Civ.P. 26(b)(3) provides in pertinent part:

[A] party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

**6.** These documents were produced to Wyoming on four CD ROMs in December 2001. The Federal Defendants admit they inadvertently removed these documents from the Administrative Record and do not oppose supplementing the Roadless Rule Administrative Record with these documents. The Plaintiff provided these documents in CD ROM form attached as Exhibit 7 to its Motion to Supplement the Administrative Record and these will be referred to as "Exhibit 7 CD–ROMs."

**7.** These documents, identified with Bates numbers WY–000001 to WY–000433, were attached to Plaintiff's Brief in Support of its Motion to Supplement as Exhibit 4 (and will be referred to as "Exhibit 4 Documents"). Plaintiff claims these documents should have

"documents that were removed from the Administrative Record upon improper claims of privilege" ("Privileged Documents"). Plaintiff also sought an order directing the Federal Defendants to address various "problems" contained in the Administrative Records; however, because these "problems" dealt mainly with the Federal Defendants' assertion of the attorney-client privilege, they are resolved by this Court's present order.

As an initial matter, this Court notes that it has rejected the Federal Defendants unprecedented argument that the attorney-client privilege attaches between different agencies of the federal government.[8] The Federal Defendants argued that "[i]n this case, the [attorney-client] privilege is not waived by the USDA's sharing of attorney communications with other Executive Branch agencies or offices, including the Council on Environmental Quality (CEQ)" because the two agencies share a "common legal interest" in the subject matter of the communication. (Fed. Defs.' Br. in Opp'n to Pl.'s Mot. to Supp., at p. 6).[9] As outlined above, federal courts have rejected a broad "intra-agency" attorney-client privilege (let alone an "inter-agency" privilege), instead

holding that the privilege only attaches when the documents in question are circulated among those agency employees who are authorized to speak on the subject matter dealt with in the documents. Thus, the Federal Defendants' argument for an "inter-agency" attorney-client privilege is rejected.

■■■ After carefully considering all of the documents the Plaintiff seeks to have supplemented into the Roadless Rule Administrative Record, which includes 433 pages of "Exhibit 4 Documents" and 119 "Privileged Documents" that were inspected *in camera*, the Court **FINDS** and **ORDERS** as follows with respect to the Roadless Rule Administrative Record:

a. Exhibit 7 CD Roms.

Plaintiff's Motion to Supplement the Administrative Record with the Exhibit 7 CD ROMs is **GRANTED.**

b. Exhibit 4 Documents.

Plaintiff's Motion to Supplement the Administrative Record with the Exhibit 4 Documents because they were directly or indirectly before the USDA when it made the decision to implement the Roadless

been included in the Administrative Record but were omitted by the Federal Defendants. Plaintiff obtained these various documents from three sources: (1) those that were submitted by Boise Cascade Corporation in support of its Motion to Supplement the Administrative Record in *Kootenai Tribe of Id. v. Veneman*, Civ. No. 01–010–NEJL, 2001 WL 1141275 (D.Idaho); (2) documents that were the subject of the United States House and Senate Subcommittee Investigations into the Roadless Rule; and (3) documents produced in response to certain Freedom of Information Act requests.

8. The Court also notes the irony and fundamental unfairness of the Federal Defendants' position in this case: (1) that on the one hand, documents shared between it and the Council on Environmental Quality (CEQ) are

protected by the attorney-client privilege; and (2) on the other hand, documents in the possession of the CEQ indicating collaboration between the USDA and CEQ in implementing the Roadless Rule should not be part of the Administrative Record because those documents were not "directly or indirectly" before the USDA when it made the decision to implement the Roadless Rule.

9. Federal Defendants rely on *Hodges, Grant & Kaufmann v. U.S. Government*, 768 F.2d 719, 721 (5th Cir.1985) for this proposition. However, in *Hodges, Grant & Kaufmann*, the Fifth Circuit did not explicitly or implicitly indicate when a third person has a "common legal interest" with respect to the "subject matter" of the litigation, nor did it involve a government agency. *Id.* at 720–21.

Rule is GRANTED in part and DENIED in part. This Court ORDERS the following Exhibit 4 Documents be supplemented into the Roadless Rule Administrative Record:

(1) WY–000001 to WY–000004;

(2) WY–000007 to WY–000009;

(3) WY–000016 to WY–000028;

(4) WY–000106;

(5) WY–000121 to WY–000122;

(6) WY–000126;

(7) WY–000132 to WY–000135;

(8) WY–000142;

(9) WY–000149;

(10) WY–000210;

(11) WY–000211 to WY–000212;

(12) WY–000213 to WY–000216;

(13) WY–000217 to WY–000233;

(14) WY–000234;

(15) WY–000235 to WY–000246;

(16) WY–000255 to WY–000258;

(17) WY–000290 to WY–000293;

(18) WY–000294 to WY–000297;

(19) WY–000311 to WY–000357;

(20) WY–000365 to WY–000369;

(21) WY–000402 to WY–000407; and

(22) WY–000423 to WY–000426.

The Court **DENIES** the Plaintiff's Motion to Supplement the Administrative Record with any other documents in Exhibit 4 not listed above. To the extent that any of the documents ordered supplemented are already in the Roadless Rule Administrative Record, they do not have be placed in the Record again.

c. Privileged Documents.

Plaintiff's Motion to Compel Production of Documents Withheld on an Improper Claim of Privilege is **GRANTED** in part and **DENIED** in part. The Court **ORDERS** the Federal Defendants to produce the following documents for supplementation into the Roadless Rule Administrative Record on the ground they were improperly withheld on the basis of privilege:

(1) Document Number 2827;

(2) Document Number 1352;

(3) Document Number 1474;

(4) Document Number 5295;

(5) Document Number 5582;

(6) Document Number 5429;

(7) Document Number 1354;

(8) Document Number 3479;

(9) Document Number 2536;

(10) Document Number 2120;

(11) Document Number 3377;

(12) Document Number 856;

(13) Document Number 3345;

(14) Document Number 3946;

(15) Document Number 4128;

(16) Document Number 4343;

(17) Document Number 3319;

(18) Document Number 5088 (only pages 1–4; page number 5 is not to be supplemented).

(19) Document Number 3059;

(20) Document Number 3061;

(21) Document Number 1346;

(22) Document Number 5074;

(23) Document Number 3955;

(24) Document Number 2958;

(25) Document Number 841; and

(26) Document Number 1030.

The Court **DENIES** Plaintiff's Motion to Compel any documents not listed above.

2. *NFMA Planning Regulations Administrative Record.*

Plaintiff's Motion to Compel Production of Documents Withheld on an Improper Claim of Privilege with respect to the NFMA Planning Regulations Administrative Record is **GRANTED** in part and **DENIED** in part. The Court **ORDERS** the Federal Defendants to produce the following documents for supplementation

into the NFMA Planning Regulations Administrative Record:

(1) Federal Defendants agreed they improperly withheld the following Documents: 1004, 1179, 1180, 42, 622, 1202, 944, 929, 985.

(2) Document Number 1150;

(3) Document Number 316;

(4) Document Number 458;

(5) Document Number 532; and

(6) Document Number 941.

The Court **DENIES** Plaintiff's Motion to Compel any documents not listed above.

3. *Road Management Rule and Transportation Policy Administrative Record*

The Plaintiff's Motion to Compel Production of Documents Withheld on an Improper Claim of Privilege with respect to the Road Management Rule and Transportation Policy is **GRANTED** in part and **DENIED** in part. The Court **ORDERS** the Federal Defendants to produce the following documents for supplementation into the Road Management Rule and Transportation Policy Administrative Record.

(1) Document Numbers 1001a0001 to 1001a0004;

(2) Document Numbers 0805a183 to 0805a0184;

(3) Document Numbers 0803c0468 to 0803c0470; and

(4) Document Numbers 1001a0061 to 1001a0062.

The Court **DENIES** Plaintiff's Motion to Compel any documents not listed above.

II. Defendant–Intervenors' Fed.R.Civ.P. 72(a) Objections to the Magistrate's Order Ruling on Defendant–Intervenors' Motion for Protective Order.

A. *Background*

Plaintiff has sufficiently alleged facts that the Federal Defendants violated FACA to withstand a Fed.R.Civ.P. 12(c) motion. Magistrate Judge Beaman set a discovery schedule for Plaintiff's FACA claim. Plaintiff has deposed several current and former federal employees. Plaintiff has also noticed several depositions *duces tecum* on the Defendant–Intervenors. In response, Defendant–Intervenors filed a motion for a protective order seeking: (1) protection from providing the documents requested in the deposition notices; and (2) to limit the scope of the questions Plaintiff could ask at the depositions. Specifically, Defendant–Intervenors sought an order limiting Plaintiff's scope of inquiry to what was said by the deponent to the government and by the government to the deponent. Defendant–Intervenors also asserted that Plaintiff's requests were unduly burdensome, overly broad, and irrelevant under Fed.R.Civ.P. 26(c).

After an emergency hearing on Defendant–Intervenors' Motion for Protective Order, Magistrate Judge Beaman granted in part, and denied in part the Defendant–Intervenors' Motion. Specifically, the Magistrate Judge ordered that:

The defendant-intervenors are protected from disclosing membership lists, volunteer lists, financial information, and documents likely to lead to the discovery of financial information and/or the identities of individuals involved in the organization, if such documents have been requested. Excluded from protection are those documents, otherwise discoverable pursuant to this order, that can be redacted to avoid disclosure of financial information and/or the identities of individuals involved with an organization. For those documents, the defendant-intervenors shall produce redacted copies. The defendant-intervenors are also protected from responding to Exhibit A, No. 5 from the *Amended Notice of Deposition Duces Tecum for Neil Lawrence,* and to all other requests in depo-

sition notices to other individuals and organizations which similarly request production of, "any and all documents of any kind, including but not limited to reports, notes, memoranda, agendas, or letters that relate in any way to any of the groups identified ... with regard to the Roadless Initiative, Planning Regulations, Transportation Policy or Road Management Rule." For all other requests, the defendant-intervenors shall fully respond to and/or produce the information requested in the notices of depositions *duces tecum* served upon the defendant-intervenors by the plaintiff.

(Order Ruling on Defendant–Intervenors' Mot. for Protective Order ("Magistrate's Order"), at pp. 16–17). Dysphoric about the Magistrate's Order, Defendant–Intervenors seek reconsideration of the order pursuant to Fed.R.Civ.P. 72(a).

### B. *Legal Standard*

 A magistrate judge's nondispositive order can only be set aside by a district judge if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); D. Wyo. Local Rule 74.1(a). Acting "similar to an appellate court[,]" the district court will review the magistrate's order pursuant to this "clearly erroneous or contrary to law" standard of review. *Clark v. Poulton,* 963 F.2d 1361, 1371 (10th Cir.1992). Under the "clearly erroneous" standard, the district court must affirm the magistrate's order unless it has a definite and firm conviction that an error has occurred. *Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988). Moreover, "[b]ecause a magistrate judge is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will overrule the magistrate judge's determination only if this discretion is clearly abused." *Hinsdale v. City of Liberal,* 981 F.Supp. 1378, 1379 (D.Kan.1997). Under the "contrary to law" standard, the

district court conducts a plenary review of the magistrate judge's purely legal determinations, setting aside the magistrate's order only if it applied an incorrect legal standard. Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE § 3069, at 350 (1997 & Supp.2002). "In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge." *Id.* at § 3069, at 350–51; *see also Hayes v. Woodford,* 301 F.3d 1054, n. 8 (9th Cir. 2002).

### C. *First Amendment Associational Privilege*

Defendant–Intervenors argue that the Magistrate's Order is clearly erroneous or contrary to the law because it is in contravention of the First Amendment Associational Privilege ("Associational Privilege"). (Br. in Supp. of Def.-Intervenors' Rule 72(a) Objections to the Magistrate's Order Ruling on Defendant–Intervenors' Motion for Protective Order ("Motion to Reconsider"), at p. 2). Defendant–Intervenors argue that Plaintiff's discovery requests, which seek Defendant–Intervenors' "internal documents regarding the forest rules, all documents that were exchanged in confidence with fellow environmental advocacy organizations, and all documents that relate in any way to lobbying visits or conversations that the groups might have had with any federal employees regarding the forest rules[,]" impinges on their First Amendment rights to petition the government and freedom of association. (*Id.* at pp. 2–3, 7–31).

Plaintiff responds that Defendant–Intervenors misconstrue the scope of the Associational Privilege and assuming that their conduct was protected by the First Amendment, Defendant–Intervenors' waived that limited privilege. (Pl.'s Br. in Resp. to Br. in Supp. of Def.-Intervenors'

Mot. to Reconsider ("Plaintiff's Resp."), at pp. 6–24). Plaintiff insists that the "First Amendment does not drape a black cloak of secrecy over meetings that are held or correspondence, memorandum, advice, and recommendations that are exchanged between individuals who represent different organizations or between such individuals and federal agencies." (*Id.* at p. 15).

 Defendant–Intervenors ask this Court to extend the Associational Privilege to one overarching association of organizations-such as the Heritage Forest Campaign-made up of several smaller organizations (the Defendant–Intervenors and other environmental organizations) or their representatives. However, the only question this Court must resolve is whether Magistrate Beaman's failure to extend the privilege was clearly erroneous or contrary law. Based on the differential standard of review and this Court's plenary review of First Amendment case law, the Court finds that Magistrate Beaman's order was not clearly erroneous or contrary to law.

 The First Amendment enjoys a special place in American society. *See Silkwood v. Kerr–McGee Corp.,* 563 F.2d 433, 437 (10th Cir.1977) ("the First Amendment occupies a preferred position in the Bill of Rights."). In relevant part, the Amendment provides "Congress shall make no law ... prohibiting ... or abridging ... the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. In order to determine if the Associational Privilege attaches, district courts have generally employed a burden-shifting analysis. *Conant v. McCaffrey,* No. C–97–0139(fms), 1998 WL 164946, *3 (N.D.Cal. March 16, 1998), 1998 U.S. Dist. LEXIS 22837, *8–9; *O'Neal v. United States,* 601 F.Supp. 874, 878 (N.D.Ind.1985); *Snedigar v. Hoddersen,* 114 Wash.2d 153, 786 P.2d 781, 786 (1990).

First, the party asserting the privilege has the burden of demonstrating that the privilege should be applied (i.e., to make a *"prima facie* showing"). *Wilkinson v. FBI,* 111 F.R.D. 432, 436 (C.D.Cal.1986). Second, if the party asserting the privilege carries its burden, the burden shifts to the party seeking disclosure to demonstrate a compelling need for the requested information (i.e., application of the balancing test). *Anderson v. Hale,* No. 00–C–2021, 2001 WL 503045, *7–8 (N.D.Ill. May 10, 2001), 2001 U.S. Dist. LEXIS 6127, *24.

1. *Prima Facie* Showing that the First Amendment Associational Privilege Applies

 The First Amendment is applicable in the context of discovery orders. *Grandbouche v. Clancy,* 825 F.2d 1463, 1465 (10th Cir.1987). The Supreme Court has recognized that the First Amendment creates a qualified associational privilege from disclosure of certain information in discovery. *NAACP v. Alabama,* 357 U.S. 449, 462, 466, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). In *NAACP v. Alabama,* the Supreme Court made clear that the Associational Privilege attaches if a discovery order adversely affects the ability of an organization and its members to collectively advocate for the organization's beliefs by: (1) inducing members to withdraw from the organization or dissuading others from joining the organization, (2) because fear of exposure of those beliefs will lead to threats, harassment, or reprisal. 357 U.S. at 462–63, 78 S.Ct. 1163. The threats, harassment, and reprisal the Supreme Court has been concerned with include threats of physical coercion or bodily harm, economic harm or reprisal, loss of employment, and other public manifestations of hostility. *Id.* at 462, 78 S.Ct. 1163; *Bates v. City of Little Rock,* 361 U.S. 516, 522, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); *Nat'l Org. of Women v. Sperry Rand*

*Corp.*, 88 F.R.D. 272, 275–76 (D.Conn. 1980). The party asserting the privilege need only show there is a reasonable probability that compelling disclosure will lead to these types of threats, harassment, or reprisal. *Buckley v. Valeo*, 424 U.S. 1, 74, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam); *Black Panther Party v. Smith*, 661 F.2d 1243, 1268 (D.C.Cir.1981); *Grunwald v. Bornfreund*, No. CV–85–3338 (CPS), 1989 WL 100035 (E.D.N.Y. Aug. 17, 1989), 1989 U.S. Dist. LEXIS 19033; *Snedigar*, 786 P.2d at 785.

 The Associational Privilege has been applied to protect an organization's internal associational activities, such as: "membership and volunteer lists,[10] contributor lists,[11] and past political activities of [organizations] and of those persons with whom they have been affiliated.[12]" *Int'l Action Center v. United States*, 207 F.R.D. 1, 3 (D.D.C.2002) (footnotes in original but renumbered); *see also Australia/Eastern U.S.A Shipping Conference v. United States*, 537 F.Supp. 807, 809 (D.D.C.1982) (collecting cases). Thus, in order to make a *prima facie* showing that the organization's internal associational activities · are protected, the party must demonstrate: (1) that a reasonable probability exists that compelled disclosure of the information sought; (2) will adversely affect the orga-

nization's ability to advocate its beliefs; (3) causing active members to withdraw from the organization or dissuading prospective members from joining the organization; (4) because of a fear that exposure of their beliefs will subject them to threats, harassment, or reprisal. The Associational Privilege will protect the disclosure of the information if the movant demonstrates these four requirements.[13]

Federal courts have consistently held that disclosure of internal associational activities (i.e., membership lists, volunteer lists, financial contributor lists, and past political activities of members) satisfy this *prima facie* showing because disclosure of these associational activities chills freedom of association. *NAACP v. Alabama*, 357 U.S. at 462, 78 S.Ct. 1163. Hence, if a discovery request seeks disclosure of internal associational activity, federal courts assume, sometimes implicitly, that the party seeking protection has made his *prima facie* showing; only then do courts shift the burden to the party seeking disclosure to demonstrate a compelling need for the information (i.e. apply the balancing test). *See Grandbouche v. Clancy*, 825 F.2d 1463, 1465–67 (discovery request sought, among other things, membership lists, therefore, the court applied the balancing test).

10. *NAACP v. Alabama*, 357 U.S. 449, 461–63, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Fed. Election Comm'n v. Machinists Non–Partisan Political League*, 655 F.2d 380, 389 (D.C.Cir. 1981) *cert. denied* 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981).

11. *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 95, 103 S.Ct. 416, 74 L.Ed.2d 250 (1982); *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America v. Nat'l Right to Work Legal Defense*, 590 F.2d 1139, 1147 (D.C.Cir.1978).

12. *Degregory v. N.H. Atty. Gen.*, 383 U.S. 825, 827, 86 S.Ct. 1148, 16 L.Ed.2d 292 (1966); *NAACP v. Alabama*, 357 U.S. at 458, 78 S.Ct.

1163; *Pleasant v. Lovell*, 876 F.2d 787, 804–805 (10th Cir.1989); *Savola v. Webster*, 644 F.2d 743, 746 (8th Cir.1981); *Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976).

13. The Associational Privilege cannot be used to circumvent general discovery. *Wilkinson*, 111 F.R.D. at 436 ("the privilege is not available to circumvent general discovery"); *Hale*, 2001 WL 503045 at *7, 2001 U.S. Dist. LEXIS at *21 (noting the Supreme Court "did not intend to provide publicly identified members of dissident organizations with a nearly impenetrable shield ... to block general discovery requests").

 When, however, the party asserting the Associational Privilege seeks to protect materials outside these accepted internal associational activities,[14] the movant must carry his burden of demonstrating that freedom of association will be chilled by disclosure of allegedly privileged material. The organization can do this by showing active members will leave, or prospective members will not join, the organization for fear of threats, harassment, or reprisal. *Wilkinson,* 111 F.R.D. at 436–37; *O'Neal,* 601 F.Supp. at 879–80. This effectively serves the purposes behind the association privilege, which is to: (1) protect individual members of organizations from harassment and intimidation; and (2) to prevent the chilling effect that disclosure will have on the willingness of individuals to join the organization. *Shelton v. Tucker,* 364 U.S. 479, 486, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Int'l Society for Krishna Consciousness, Inc. v. Lee,* No. 75–CV–5388 (mjl), 1985 WL 315, *8 (S.D.N.Y. Feb. 28, 1985), 1985 U.S. Dist. LEXIS 22188, *22; *Britt v. Superior Court,* 20 Cal.3d 844, 143 Cal.Rptr. 695, 574 P.2d 766, 772 (1978).

For example, in *Anderson v. Hale,* the defendant-dissident organization (and various non-party members), filed a motion to quash Plaintiff's subpoenas served on various internet service providers requesting the providers to produce "any information, including e-mails, activity logs, and address books" of the defendants' e-mail accounts. 2001 WL 503045, at *1, 2001 U.S. Dist. LEXIS 6127, at *2–3. The defendants argued this information was protected by the Associational Privilege. *Id.* The district court held that because the subpoenas aimed to discover what the publicly identified members of the defendant's

organization knew about an alleged conspiracy, and did not seek disclosure of anonymous members' information, the Association Privilege did not apply because "the risk of inducing present members to withdraw or of discouraging potential members from joining [was] too speculative to warrant heightened scrutiny under the First Amendment." *Id.* at *6, 2001 U.S. Dist. LEXIS 6127, at *19–20. Hence, because the Defendant did not make a *prima facie* showing that the information was privileged, the district court did not apply the balancing test and required disclosure of the information. *Id.*

In the present case, the Magistrate's Order found that Defendant–Intervenors had not made this *prima facie* showing. Nevertheless, the Magistrate's Order protected the Defendant–Intervenors from disclosing membership lists, volunteer lists, financial information, and documents likely to lead to the discovery of financial information and/or the identities of individuals involved with an organization. (Magistrate's Order, at pp. 12, 16). Magistrate Judge Beaman then concluded that the Associational Privilege did not protect the Defendant–Intervenors from disclosing the generalized information about their activities (i.e., inter-group lobbying efforts) relating to the four agency actions at issue. (*Id.* at p. 12, 14). Therefore, because the Defendant–Intervenors did not make a *prima facie* showing that the Associational Privilege applied to the activities relating to the agency actions at issue, it was not necessary for Magistrate Judge Beaman to consider the Plaintiff's asserted need for the requested information and apply the balancing test. (*Id.* at p. 14).

---

14. In a sense, courts have taken judicial notice of the fact that disclosure of these internal associational activities-membership lists, volunteer lists, financial contributor lists, and political activities of the organization's members-will lead to threats, harassment, or reprisal, thereby chilling freedom of association.

Magistrate Judge Beaman's Order is not clearly erroneous or contrary to law. In its Motion to Reconsider, Defendant–Intervenors assert that their ability to associate with other organizations while petitioning the government would be significantly hindered if they (and "their colleagues") "feared that their most candid internal and inter-group political planning and strategy discussions would be disclosed through compelled discovery to third parties, including parties that are adversaries." (Def.-Intervenors' Mot. to Reconsider, at p. 11). In support of this argument, Defendant–Intervenors cite the affidavits of Debbie Sease, the Legislative Director of the Sierra Club, and Christine Lichtenfels, Associate Director of the Wyoming Outdoor Council, who state that forced disclosure of, among other things, their *"inter-group* ideas, discussions, and debates" would chill their freedom of association. (Def.-Intervenors' Mot. to Reconsider, at p. 11, Exh. 3 ¶¶ 18–19, Exh. 4, ¶¶ 8, 16).

Defendant–Intervenors, however, misread the Magistrate's Order and First Amendment case law. First, the Magistrate's Order does not require disclosure of the Defendant–Intervenors' internal associational activities, i.e., membership lists, financial contributor lists, volunteer lists, or past political activity of its anonymous individual members. Second, Defendant–Intervenors have not carried their burden of demonstrating that compelled disclosure of the material sought by the Plaintiff will adversely affect the Defendant–Intervenors' ability to advocate its belief because (1) members will withdraw or prospective members will not join the organizations, or (2) because exposure of their beliefs shown through the various organizations will subject them to threats, harassment, or reprisal. Two of the Intervenors, Sierra Club and the Wyoming Outdoor Council ("WOC"), generally assert that if their inter-group discussions are disclosed through discovery, individuals and other groups will "avoid association" with the Defendant–Intervenors. (*Id.* at Exh. 4, ¶ 16). Although not supported by the Record, the Court will assume that all Defendant–Intervenors can similarly produce such self-serving affidavits.

Thus, Defendant–Intervenors appear to be asserting one of two things. First, based on the affidavits, Defendant–Intervenors appear to argue that individual members of the various environmental organizations will withdraw or prospective members will not join because of the fear of disclosure of inter-group activities between the environmental organizations will be disclosed to political adversaries. (*Id.* at Exh. 4, ¶ 16). This argument fails because the individual members can remain anonymous. Therefore, a reasonable probability does not exist that the individual members of the organizations will be subject to threats, harassment, or reprisal for the views their organizations espouse.

Alternatively, the Defendant–Intervenors argue that their ability to associate with other organizations will be chilled because "candid internal and inter-group ideas, discussions and debates would be disclosed to third parties, including parties that are political adversaries." Basically, Defendant–Intervenors are arguing that various organizations (or their representatives) may not come together to form large organizations (i.e., an association of organizations); or, if an association of organizations is formed (such as the Heritage Forest Campaign), various independent organizations will withdraw because their inter-group meetings can be disclosed to political adversaries. This argument fails to recognize that, even if such an inter-group Associational Privilege existed, the Defendant–Intervenors have not shown that the independent environmental organizations (such as Sierra Club or WOC) would withdraw from this

association of organizations because the environmental organization (or their representatives) would be subject to threats, harassment, or reprisal.[15] Additionally, Plaintiff's have not cited, nor was this Court able to find, a case that stood for the proposition that the Associational Privilege attaches to an association of organizations (or their representatives).

Based on the foregoing, the Magistrate's Order cannot be considered clearly erroneous or contrary to law. However, assuming Defendant–Intervenors could establish a *prima facie* showing that they were entitled to assert the Associational Privilege, the Plaintiff has carried its burden of demonstrating a compelling need for the information.

Briefly, this Court will address the Defendant–Intervenors argument that the Magistrate Judge Beaman's Order (1) misinterprets, and is contradicted by, case law; (2) has no constitutional basis; and (3) has no logical basis. (Def.-Intervenors' Mot. to Reconsider, at 13–23). Contrary to Defendant–Intervenors' castigating, Magistrate Judge Beaman's Order is neither clearly erroneous nor contrary to law. The cases Defendant–Intervenors cite in their brief do not hold otherwise; in fact, the cases Defendant–Intervenors cite recognize the line of demarcation between establishing a *prima facie* case of Associational Privilege and applying a balancing test after such a showing has been made.[16] Defendant–Intervenors misreading of these cases probably led to their erroneous

---

**15.** It would be anomalous for an environmental organization such as the Sierra Club or WOC to argue it would not join a larger association of environmental groups, such as the Heritage Forest Campaign, because it would be subject to threats, harassment, or reprisal as joining such an association would only further a cause the organization already publicly espouses. This Court believes that if this argument was adopted, it would extend a privilege designed to protect "individual members" of various dissident organizations from direct, immediate, and substantial harm too far.

**16.** The Defendant–Intervenors complain that Magistrate Judge Beaman did not cite the following the cases in his Order, however, they were inapposite to that Order because the Judge did not find that Plaintiff established a *prima facie* case that the Associational Privilege should be applied. *See ETSI Pipeline Project v. Burlington Northern, Inc.,* 674 F.Supp. 1489, 1490 (D.D.C.1987) (Plaintiffs sought financial contributor lists, therefore, the court applied a balancing test); *Australia/Eastern U.S.A. Shipping,* 537 F.Supp. at 812 (government sought disclosure of certain associational activity, therefore the court applied a balancing test to hold the Associational Privilege applicable); *United States v. Garde,* 673 F.Supp. 604, 607 (D.D.C.1987) (plaintiff made a *prima facie* showing that the Associational Privilege applied, therefore

court conducted a balancing test and held information was not protected); *Snedigar,* 786 P.2d at 785–87 (holding court of appeals erred in requiring the party asserting the Associational Privilege to show that the disclosure of the information would in fact impinge on First Amendment rights and then remanding the case for the lower court to apply the balancing test); *Britt,* 143 Cal.Rptr. 695, 574 P.2d at 777 (holding the trial court erred in issuing a discovery order that required disclosure of membership lists and financial contributors because it was contrary to the First Amendment). The Defendant–Intervenors also assert the Magistrate Judge Beaman misinterpreted the following cases: *Federal Election Comm'n v. Machinists Non–Partisan Political League,* 655 F.2d 380, 389–91 (D.C.Cir. 1981) (holding the Associational Privilege applied because the FEC subpoena demanded a list of all members and volunteers of the defendant's political group); *Ealy v. Littlejohn,* 569 F.2d 219, 229 (5th Cir.1978) (holding the Associational Privilege prevented the grand jury from issuing subpoenas for membership lists and financial contributors of a dissident political organization); *Int'l Action Center v. United States,* 207 F.R.D. 1, 4 (D.D.C.2002) (holding, after applying the balancing test, that the Associational Privilege applied because the information sought to be disclosed was not relevant). Thus, these cases are not inconsistent with Magistrate Judge Beaman's Order.

conclusions regarding Magistrate Judge Beaman's Order.

## 2. *Silkwood* Balancing Test.

If a party asserting the First Amendment Associational Privilege makes a *prima facie* showing of entitlement to the privilege, the burden shifts to the party seeking disclosure to demonstrate a compelling need for the requested information. *NAACP v. Alabama,* 357 U.S. at 463, 78 S.Ct. 1163; *Grandbouche,* 825 F.2d at 1466–67; *Federal Election Comm'n v. Machinists Non–Partisan Political League,* 655 F.2d 380, 389 (D.C.Cir.1981); *Black Panther Party,* 661 F.2d at 1266–67; *Australia/Eastern U.S.A. Shipping Conference,* 537 F.Supp. at 809. Although articulated differently, courts generally look at three factors-the relevance of the information sought, the need for that information, and the extent of the injury that disclosure may cause to associational rights-in balancing the interests of the parties when the Associational Privilege is asserted. *Anderson v. Hale,* No. 00–C–2021, 2001 WL 503045, *3–4 (N.D.Ill. May 10, 2001), 2001 U.S. Dist. LEXIS 6127, *11.

■■■ In the Tenth Circuit, district courts apply the "*Silkwood* balancing test." *See Silkwood v. Kerr–McGee Corp.,* 563 F.2d 433, 438 (10th Cir.1977). The *Silkwood* balancing test requires the district court to consider six factors:

> (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; ... (4) the nature of the information; ... (5) the validity of the claimed First Amendment privilege[; and (6) whether the party asserting the privilege] has placed

certain information into issue by his complaint ....

*Grandbouche,* 825 F.2d at 1466–67. After examining these factors the district court can "decide whether the privilege must be overborne by the need for the requested information." *Id.*

### a. Relevance.

When a claim of Associational Privilege is asserted, the relevance standard is more exacting than the minimal showing of relevance under Rule 26(b)(1). The Tenth Circuit has described this as "certain relevance," which means that the information must go to the "heart of the matter." [17] *Grandbouche,* 825 F.2d at 1467; *Silkwood,* 563 F.2d at 438; *Black Panther Party,* 661 F.2d at 1268; *Lee,* 1985 WL 315, at *—, 1985 U.S. Dist. LEXIS 22188, at *24–25 (to obtain discovery of this nature the party must show the information sought is "crucial to the party's case" or goes to the "heart of the claims").

Magistrate Judge Beaman found the information the Plaintiff requested was relevant under Fed.R.Civ.P. 26(b)(1). However, as noted above, the Magistrate did not apply the *Silkwood* balancing test and therefore did not apply the more exacting relevance standard. Nevertheless, Magistrate Judge Beaman's Order demonstrates the information Plaintiff seeks also meets this more exacting standard because

> in determining whether an advisory committee was "established" or "utilized" by the government, as required to find a FACA violation, evidence of government action is not necessarily confined to the direct communications between the government and the alleged

---

**17.** As originally articulated, the *Silkwood* balancing test stated that the information must go to the heart of the matter and be of a certain relevance. *See Silkwood,* 563 F.2d at 438. However, in a subsequent decision explaining the *Silkwood* balancing test, the Tenth Circuit apparently combined these elements under the single factor "relevance." *See Grandbouche,* 825 F.2d at 1466.

advisory committee. Rather, discoverable evidence pertaining to alleged FACA violations is just as likely to be uncovered by examining communications not involving the government, particularly when the government is alleged to have "utilized" an advisory committee. (Magistrate's Order, at p. 10). Hence, the information regarding Defendant–Intervenors' inter-group communications is critical to the Plaintiff's determination of whether those groups were "utilized" by the Federal Defendants. In fact, the information goes right to the heart of the matter at hand.

b. Necessity of Receiving the Information Sought

In 1972, FACA was enacted to combat secrecy and wastefulness and to keep the public informed with respect to the number, purpose, membership activities, and cost of advisory committees. 5 U.S.C.App. § 2(b)(4), (5). The necessity of the information is correlated to its relevance; that is, the more relevant the information, the greater the need for disclosure. *Hale,* 2001 WL 503045, at *4, 2001 U.S. Dist. LEXIS 6127, at *13. However, where the danger to associational activity is great, the district court is more likely to uphold a claim of privilege, notwithstanding the inquiring party's need. *Id.* In enacting FACA, Congress intended to eliminate secret advisory committees. In recognition of Congress' intent in enacting FACA, the Court finds that the Defendant–Intervenors' documents regarding the four agency decisions under consideration are necessary to determine whether Defendant–Intervenors were participants in an illegal advisory committee established or utilized by the federal government.

c. Whether the Information is Available from Other Sources

 Plaintiff alleges the information it seeks is not available from other sources. The party seeking disclosure can demonstrate this factor by showing it "has independently attempted to obtain the information elsewhere and has been unsuccessful." *Silkwood,* 563 F.2d at 433. One district court has stated that the inquiring party cannot merely demonstrate that seeking similar information from alternative sources will be more burdensome or costly. Rather, the inquiring party must exhaust all reasonable alternative sources of information by which he could obtain the information in a less chilling manner. *Hale,* 2001 WL 503045, at *4 2001 U.S. Dist. LEXIS 6127, at *12–13; *Black Panther Party,* 661 F.2d at 1268; *Snedigar,* 786 P.2d at 786.

Plaintiff asserts that evidence demonstrating that the government established or utilized an advisory committee involving Defendant–Intervenors in violation of FACA may be in the exclusive possession of Defendant–Intervenors. An example given by Plaintiff is a letter sent by the government to the Defendant–Intervenors organizing a meeting. This information would no longer be in the government's possession; hence, it is not available from other sources. The Court also notes that at the hearing in this matter, Defendant–Intervenors noted that the Plaintiff had deposed federal employees and has not presented evidence of an advisory committee being established or utilized. However, this also demonstrates that the Plaintiff has exhausted reasonable alternative sources for obtaining the information. Additionally, it may be indicative of the fact that the only evidence available is in Defendant–Intervenors' possession.

d. The Nature of the Information and Validity of the Claimed First Amendment Privilege

As described above, the information sought by Plaintiff is relevant and neces-

sary to Plaintiff's FACA claim. Defendant–Intervenors' Associational Privilege claim appears to be a reasonable extension of existing law and is not frivolous or meritless. However, Defendant–Intervenors' failure to comply with compulsory discovery rules unless ordered by this Court, combined with their other tactics to avoid discovery throughout this case indicates that Defendant–Intervenors may not be complying with the Federal Rules of Civil Procedure's admonition that the Rules be "administered to secure the just, speedy, and inexpensive determination" of the action. *See* Fed.R.Civ.P. 1.

e. Putting Information in Issue and Waiver.

▇▇▇▇ Plaintiff argues that the Defendant–Intervenors waived their Associational Privilege because the Defendant–Intervenors disclosed the information they contend is privileged to individuals and groups outside their various independent organizations. (Pl.'s Resp., at p. 7). Before addressing waiver, however, the Court will consider the fact that the Defendant–Intervenors, like the Plaintiff in *Grandbouche,* placed certain information "in issue." *Grandbouche,* 825 F.2d at 1467. In *Grandbouche,* the Tenth Circuit stated that "the fact [plaintiff] has placed certain information into issue by his complaint is a factor that the trial court should consider under the *Silkwood* balancing test." *Id.* A plaintiff or intervenor does not waive his First Amendment rights by bringing or joining suit. *Id.* However, once a party has joined an action, it "cannot realistically hope to pursue [the] suit in a risk-free atmosphere." *Nat'l Org. of Women v. Sperry Rand Corp.,* 88 F.R.D. 272, 275 (D.Conn.1980). Moreover, the party asserting the Associational Privilege "cannot be protected from a disclosure merely because the information disclosed may become a basis of ... [FACA] liability or be admitted as evidence in a future

court action." *Australia/Eastern U.S.A. Shipping Conference,* 537 F.Supp. at 812.

This Court does not need to decide Plaintiff's difficult waiver argument because, as explained below, it finds Plaintiff's need for the information at issue outweighs Defendant–Intervenors limited, if any, infringement on its members' associational activity. However, the Court notes that at least one federal district court has held that the Associational Privilege is waived by public disclosure of the information asserted as privileged. *See Kisser v. Coalition for Religious Freedom,* NO. 95–MC–0174, 1995 WL 422786, *1–2 (E.D.Pa. July 13, 1995), 1995 U.S. Dist. LEXIS 9719, *4.

f. Balancing Plaintiffs Need for the Information Against the Members of Defendant–Intervenors' Organizations Associational Rights

After examining the above factors, the Tenth Circuit has directed district courts "to decide whether the privilege must be overborne by the need for the requested information." *Grandbouche,* 825 F.2d at 1466–67. To compel disclosure of information that is asserted as privileged, the state's need must be compelling. *NAACP v. Alabama,* 357 U.S. at 461, 78 S.Ct. 1163. In *Buckley v. Valeo,* the Supreme Court, in holding the Associational Privilege did not apply, noted that "there are governmental interests sufficiently important to outweigh the possibility of infringement, particularly when the 'free functioning of our national institutions' is involved." 424 U.S. 1, 66, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) *quoting Communist Party v. Subversive Activities Control Bd.,* 367 U.S. 1, 97, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961).

This Court finds that Defendant–Intervenors did not carry their burden of establishing Magistrate Judge Beaman's Order was clearly erroneous or contrary to law in

its conclusion that Defendant–Intervenors had not established a *prima facie* showing of application of the Associational Privilege.[18] Alternatively, this Court finds that even if Defendant–Intervenors had made such a showing, the limited effect on Defendant–Intervenors' privilege must be overborne by the Plaintiff's need for the requested information. This is particularly true when a FACA violation is alleged because, as Defendant–Intervenors acknowledge, it involves the free functioning of our national institutions and the American people have a right to know what goes on behind closed doors.

### D. Relevancy and Overbreadth of Plaintiff's Discovery Requests.

Defendant–Intervenors argue that "the document requests appended to the State of Wyoming's deposition notices are overly broad, unduly burdensome, and seek information that is neither relevant nor likely to lead to admissible evidence relevant to Wyoming FACA's claim." (Def.-Intervenors' Mot. to Reconsider, at p. 31–32). Magistrate Judge Beaman's Order carefully considered these objections. (*See* Magistrate's Order, at pp. 9–10 (¶ 5), 14–15 (¶ 7)). This Court finds Magistrate Judge Beaman's Order with respect to the relevancy of the information sought by Plaintiff is not clearly erroneous or contrary to law (and additionally satisfies the heightened relevancy requirement under the *Silkwood* balancing test). This Court additionally finds that Magistrate Judge Beaman's Order ruling on Defendant–Intervenors' objections to the requested discovery on the ground that it was overly broad and unduly burdensome is not clearly erroneous or contrary to law.

### E. Request for Stay Pending Appeal to the Tenth Circuit.

Defendant–Intervenors request this Court to enter a "stay of the Court's decision and the underlying depositions and duty to respond to the related document requests until the Tenth Circuit has considered an appropriate request by Intervenors for review." The Court denies this request.

### *Conclusion*

For all of the aforementioned reasons, Defendant–Intervenors' Motion for Reconsideration is **DENIED** because Magistrate Judge Beaman's Order was neither clearly erroneous nor contrary to law. Plaintiff is entitled to obtain discovery consistent with Magistrate Judge Beaman's Order with the slight modification that Plaintiff is not entitled to the discovery of any information regarding the political activities of anonymous members of the Defendant–Intervenors' various environmental organizations. **THEREFORE, IT IS HEREBY ORDERED** that Defendant–Intervenors are protected from disclosing membership lists, volunteer lists, financial information, the political activities of anonymous members, and/or the identities of individuals involved with an organization, if such documents have been requested. Excluded from protection are those documents otherwise discoverable pursuant to Magistrate Judge Beaman's Order and this Order, that can be redacted to avoid disclosure of finan-

---

18. The Court is aware of the decisions involving Wyoming's attempts to depose non-party witnesses in this case. *See Wyoming v. U.S.Dept. of Agr.* 208 F.R.D. 449 (D.D.C. 2002); *Wyoming v. U.S.D.A.,* Misc. No. 02–mc–23 (D.Or. Aug. 12, 2002). This Court is obviously not bound by those decisions and finds the respective district courts' reasoning unpersuasive because Wyoming's claims were analyzed from the standpoint of non-party witnesses asserting the Associational Privilege and the privilege was not considered to the extent necessary in the present action.

cial information and/or identities and political activities of individuals involved with the organization. For those documents, the Defendant–Intervenors **SHALL PRODUCE** redacted copies. The Defendant–Intervenors are also protected from responding to Exhibit A, No. 5 from the *Amended Notice of Deposition Duces Tecum for Neil Lawrence,* and to all other requests in deposition notices to other individuals and organizations which similarly request production of "any and all documents of any kind, including but not limited to reports, notes, memoranda, agendas, or letters that relate in any way to any of the groups identified ... with regard to the Roadless Initiative, Planning Regulations, Transportation Policy or Road Management Rule." For all other requests, the Defendant–Intervenors **SHALL FULLY RESPOND TO AND/OR PRODUCE** the information requested in the notices of depositions *duces tecum* served upon the Defendant–Intervenors by Plaintiff.