825 F.2d 1463
 8 Fed.R.Serv.3d 1037
 John E. GRANDBOUCHE, Plaintiff-Appellant,
National Commodity and Barter Association, Plaintiff,
v.
Thomas J. CLANCY, Director, Criminal Investigation,
Washington, D.C., Philip Wilens, Director, Office of
Enforcement Operations, Department of Justice, Larry Lovell,
Kenneth Batson, Larry Hyatt, Chief of Internal Revenue
Service, Criminal Investigation Div., Dennis Graham,
individually and as agent for The First National Bank of
Englewood, The First National Bank of Englewood, and Does P
through Z, unknown named agents of the Government of USA,
Defendants-Appellees.
 No. 84-2094.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 13, 1987.
 
 William A. Cohan, Cohan & Stahl, P.C., Denver, Colo., for plaintiff-appellant.
 Alan Epstein (Michael W. Jones, with him on the brief), Hall & Evans, Denver, Colo., for defendants-appellees First Nat. Bank of Englewood and Dennis Graham.
 Elaine F. Ferris, Tax Div., Dept. of Justice (Michael L. Paup, Jonathon S. Cohen, Tax Div., Dept. of Justice, with her on the brief and Glenn L. Archer, Jr., Asst. Atty. Gen., and Robert N. Miller, U.S. Atty. of counsel, with her on the brief), Washington, D.C., for Federal defendants-appellees.
 Before BARRETT, SEYMOUR and BALDOCK, Circuit Judges.
 SEYMOUR, Circuit Judge.
 This appeal arises from an action for damages brought by John E. Grandbouche against various defendants, including numerous agents of the United States Internal Revenue Service (IRS). The district court dismissed the suit after Grandbouche failed to comply with its discovery order. We agree with Grandbouche's contention on appeal that the trial court erred in failing to apply a balancing test to his assertion of a First Amendment privilege not to comply with the discovery order. We therefore vacate the trial court's dismissal of the action and remand for application of a balancing test. However, we disagree with Grandbouche's assertion that the trial court erred in denying his motion for judgment by default.
 I.
 John Grandbouche, the National Commodity and Barter Association (NCBA), which Grandbouche founded and directed, and Robert L. Bennett instituted this suit against Pauline Adams, various IRS investigative agents, supervisory officials from the IRS and the Department of Justice, the First National Bank of Englewood (Bank), and Dennis Graham, head cashier of the Bank. For reasons not relevant to this appeal, the NCBA, Robert Bennett, Pauline Adams, and the IRS and Justice Department supervisory officials have all been dismissed as parties.
 
 
 1
 According to Grandbouche, IRS investigators and Pauline Adams, an IRS informant, infiltrated the offices of the NCBA, an organization that espouses dissident views on the federal income tax system. Grandbouche contends that the IRS, acting through Adams, seized documents and other information from the NCBA, thereby violating his First and Fourth Amendment rights. He claims, among other things, that defendants used information illegally seized from the NCBA to harass and intimidate the organization's members, causing some members to leave the organization and causing some prospective members not to join. He also claims that IRS agents, as part of a criminal investigation of the NCBA's activities, caused Dennis Graham and the Bank to illegally turn over bank documents regarding the NCBA to an Assistant United States Attorney.
 
 II.
 
 2
 While this appeal was pending, John Grandbouche died. We therefore asked the parties to file supplemental briefs on the question whether this action could survive his death. In suits against state officials brought under 42 U.S.C. Sec. 1983 (1982), questions of survivorship are decided by looking to state law. See 42 U.S.C. Sec. 1988 (1982); see also Robertson v. Wegmann, 436 U.S. 584, 589-90, 98 S.Ct. 1991, 1994-95, 56 L.Ed.2d 554 (1978); Moor v. County of Alameda, 411 U.S. 693, 702 n. 14, 93 S.Ct. 1785, 1792 n. 14, 36 L.Ed.2d 596 (1973). Because Grandbouche's suit is a Bivens action against federal officials, the law under section 1983 has no direct effect in this case. Nevertheless, section 1983 suits and Bivens actions are conceptually identical, and federal courts frequently look to section 1983 to fill gaps left by Bivens. Our review of the case law indicates that questions of survivorship in Bivens suits are decided by looking to state law.[1] See Beard v. Robinson, 563 F.2d 331, 333 (7th Cir.1977), cert. denied, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978); Barrett v. United States, 651 F.Supp. 604, 605 (S.D.N.Y.1986) (dictum); Estate of Masselli v. Silverman, 606 F.Supp. 341, 343 (S.D.N.Y.1985). Grandbouche brought this suit in the District of Colorado; we therefore examine the Colorado law of survivorship.
 
 
 3
 Colo.Rev.Stat. Sec. 13-20-101(1) (1973) provides that "[a]ll causes of action, except actions for slander or libel, shall survive and may be brought or continued notwithstanding the death of the person in favor of ... whom such action has accrued." Grandbouche's suit cannot be characterized as an action for slander or libel. We therefore hold that the action survives his death.[2]
 
 III.
 
 4
 During the discovery phase of this suit, defendants requested production of the following:
 
 
 5
 (1) the membership list of the NCBA for 1979 through 1983;(2) the general NCBA mailing list for those receiving supplements to NCBA publications from 1979 through 1983;
 
 
 6
 (3) the mailing list used to advise NCBA members and others that the NCBA was holding conventions in 1981, 1982, and 1983;
 
 
 7
 (4) the list of those who actually attended these conventions;
 
 
 8
 (5) copies of the agenda for the NCBA conventions; and
 
 
 9
 (6) a copy of a letter written by Grandbouche that was read as the opening remarks of the 1983 NCBA convention.
 
 
 10
 Rec., vol. III, at 346-47. In support of this broad discovery request, defendants argue that they need the NCBA membership information and mailing lists in order to prepare their defense of Grandbouche's claim that people left or failed to join the organization due to IRS harassment. Defendants have not stated, however, why they need the other information requested. A United States Magistrate ordered Grandbouche to produce the requested documents.
 
 
 11
 Grandbouche agreed to produce items five and six.[3] With regard to items one through four, however, he argued to the trial court that producing the requested information would infringe upon his First Amendment right of association. The court disagreed, ruling that the First Amendment has no application to discovery orders in private litigation. The court affirmed the magistrate's order and awarded attorneys' fees to defendants for Grandbouche's appeal of the magistrate's order. Following his continued refusal to comply with discovery, the trial court dismissed his action pursuant to Fed.R.Civ.P. 37(b)(2)(C).
 
 
 12
 The imposition of sanctions for failure to comply with a discovery order "is within the trial court's discretion and will not be disturbed on appeal unless the court has abused its discretion." Mertsching v. United States, 704 F.2d 505, 506 (10th Cir.) (per curiam), cert. denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). Grandbouche contends that dismissal of his suit constitutes an abuse of discretion because (1) the trial court erroneously concluded that the First Amendment does not apply in private litigation and (2) the trial court failed to apply a balancing test, as required by Silkwood v. Kerr-McGee Corp., 563 F.2d 433 (10th Cir.1977). We agree with both of these contentions.
 
 
 13
 Although the First Amendment does not normally restrict the actions of purely private individuals, the amendment may be applicable in the context of discovery orders, even if all of the litigants are private entities. In this case, for example, the magistrate's order compelling discovery and the trial court's enforcement of that order provide the requisite governmental action that invokes First Amendment scrutiny. See NAACP v. Alabama, 357 U.S. 449, 463, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958); see also Shelley v. Kraemer, 334 U.S. 1, 14-15, 68 S.Ct. 836, 842-43, 92 L.Ed. 1161 (1948). Thus, the trial court erred in failing to consider the merits of Grandbouche's claim of a First Amendment privilege.
 
 
 14
 In Silkwood, this court announced that when the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure. Silkwood, 563 F.2d at 438. Among the factors that the trial court must consider are (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information. See id. The trial court must also determine the validity of the claimed First Amendment privilege. Only after examining all of these factors should the court decide whether the privilege must be overborne by the need for the requested information.
 
 
 15
 Defendants attempt to distinguish Silkwood by pointing out that the individual claiming the privilege there was not a party to the suit. According to defendants, Grandbouche should be deemed to have waived his privilege by bringing suit and by placing into issue the information sought to be discovered. Defendants argue that Grandbouche should not be able both to claim an injury to his associational interests and to prevent defendants from securing the associational information they need to defend that claim.
 
 
 16
 Although this argument is intuitively appealing, we refuse to adopt a per se rule that a plaintiff waives his First Amendment privileges simply by bringing suit. Cf. Savola v. Webster, 644 F.2d 743, 746 (8th Cir.1981) (per curiam); Britt v. Superior Court, 20 Cal.3d 844, 574 P.2d 766, 775, 143 Cal.Rptr. 695, 704 (1978) (en banc). In Britt, the California Supreme Court said:
 
 
 17
 "[W]hile the filing of a lawsuit may implicitly bring about a partial waiver of one's constitutional right of associational privacy, the scope of such 'waiver' must be narrowly rather than expansively construed, so that plaintiffs will not be unduly deterred from instituting lawsuits by the fear of exposure of their private associational affiliations and activities. (See, e.g., Familias Unidas v. Briscoe (5th Cir.1976) 544 F.2d 182, 185-186, 192.) When such associational activities are directly relevant to the plaintiff's claim, and disclosure of the plaintiff's affiliations is essential to the fair resolution of the lawsuit, a trial court may properly compel such disclosure.... Even under such circumstances, however, the general First Amendment principles noted above dictate that the compelled disclosure be narrowly drawn to assure maximum protection of the constitutional interests at stake."
 
 
 18
 574 P.2d at 775, 143 Cal.Rptr. at 704. We agree with this reasoning.
 
 
 19
 Nevertheless, the fact that Grandbouche has placed certain information into issue by his complaint is a factor that the trial court should consider under the Silkwood balancing test. In fact, Grandbouche concedes that he has no basis for refusing to produce information concerning persons who he claims were harassed or intimated by the IRS. See Reply Brief of Appellant at 10. However, other information sought by defendants may, on balance, be protected from disclosure.
 
 
 20
 Accordingly, the trial court's order dismissing Grandbouche's action is vacated. In addition, because the court rejected Grandbouche's privilege claim under an erroneous conclusion of law, we vacate the order awarding defendants attorneys' fees. We remand for application of a balancing test under the standards set forth in Silkwood and in this opinion.
 
 IV.
 
 21
 Grandbouche contends that the trial court erred in denying his motion for judgment by default. We are not persuaded.
 
 
 22
 Grandbouche filed his second amended complaint in March 1982. In September 1982, the federal defendants filed a motion to dismiss or, in the alternative, for summary judgment. This motion was denied in April 1983. Nearly one year later, Grandbouche moved for judgment by default, claiming that the federal defendants had failed to answer his second amended complaint within the time specified in Fed.R.Civ.P. 12(a)(1) (ten days after denial of motion to dismiss or for summary judgment). On March 22, 1984, the federal defendants filed their answer to Grandbouche's complaint and also filed an objection to Grandbouche's motion for a default judgment.
 
 
 23
 On March 29, 1984, the trial court denied Grandbouche's motion. In its order, the court noted that Grandbouche had not been prejudiced by defendants' delay in answering the complaint. Rec., vol. III, at 424. Discovery had been proceeding, and Grandbouche was on notice of several of defendants' legal defenses. Id. The court also found that the delay was a result of the inadvertence of counsel and was not due to bad faith. Id. The court noted its reluctance to determine the outcome of the suit on the basis of a procedural error, rather than on the merits. Id.
 
 
 24
 Grandbouche filed his notice of appeal on August 6, 1984. The federal defendants argue that, because the notice of appeal was filed more than sixty days after the trial court's order denying the motion for default judgment, we are without jurisdiction to hear Grandbouche's appeal of that issue. See Fed.R.App.P. 4(a). The denial of Grandbouche's motion for default judgment was an interlocutory order and therefore could not be appealed until the trial court issued a final judgment. See Adult Film Ass'n of America, Inc. v. Thetford, 776 F.2d 113, 115 (5th Cir.1985) (per curiam); McNutt v. Cardox Corp., 329 F.2d 107, 108 (6th Cir.1964) (per curiam). We therefore reject defendants' argument and proceed to consider the merits of Grandbouche's appeal.
 
 
 25
 A trial court is vested with broad discretion in deciding a default judgment question. See Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 64 (2d Cir.1986); Mendoza v. Wight Vineyard Management, 783 F.2d 941, 945 (9th Cir.1986) (per curiam); Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir.1970). The facts mentioned in the court's order adequately demonstrate "good cause" for setting aside a notice of default. See Fed.R.Civ.P. 55(c); see also Brock, 786 F.2d at 64. Accordingly, we conclude that the trial court did not abuse its discretion in denying the motion for default.
 
 V.
 
 26
 In sum, we vacate the trial court's orders dismissing Grandbouche's suit and awarding attorneys' fees. We affirm the trial court's denial of Grandbouche's motion for default judgment. In addition, we hold that this action survives Grandbouche's death and may be continued by his estate. The case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 In Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Supreme Court held that whenever a state survival statute would abate a Bivens-type suit against a defendant whose conduct caused the plaintiff's death, federal common law allows the action to survive. Id. at 24, 100 S.Ct. at 1475. Carlson also contains language indicating that, to further the goal of deterring the unconstitutional conduct of federal officials, the Court might apply a federal rule allowing survival of all Bivens actions. See id. at 24-25, 100 S.Ct. at 1474-75. Because we decide that this suit survives under Colorado law, we need not decide whether Carlson would dictate its survival under federal law
 
 
 [2]
 Defendants First National Bank of Englewood and Dennis Graham argue that there is no rational basis for drawing a distinction between defamation suits and suits that allege violations of First Amendment rights. They therefore claim that section 13-20-101(1) violates the equal protection clauses of the United States and Colorado constitutions. Without deciding the constitutional issue, we note that the only cases that have found equal protection problems with exceptions in survival statutes have remedied the problems by throwing out the exceptions, thus allowing all actions to survive. See Thompson v. Estate of Petroff, 319 N.W.2d 400, 407 (Minn.1982); Moyer v. Phillips, 462 Pa. 395, 341 A.2d 441, 445 (1975). Because we believe that a Colorado court would respond similarly were it to find an equal protection problem with section 13-20-101(1), we see no reason to decide the constitutional question
 
 
 [3]
 The record does not indicate whether Grandbouche in fact complied with this part of defendants' request