**MARFORK COAL COMPANY, INC.,**
Plaintiff/Counter–Defendant,

v.

David Aaron **SMITH**, Amber Nichman, Eric Blevins, Joshua Francisco Graupera and Isabelle Rozendaal, Defendants/Counter–Claimants.

Civil Action No. 5:10–0069.

United States District Court,
S.D. West Virginia,
Beckley Division.

March 17, 2011.

Patrick R. Barry, Andrew B. McCallister, Samuel M. Brock, III, Timothy D. Houston, Spilman, Thomas & Battle, Charleston, WV, for Plaintiff.

Thomas A. Rist, Rist Law Offices, Beckley, WV, David M. Dawson, Dawson Law Office, Charleston, WV, Roger D. Forman, Forman & Rist, Charleston, WV, Terry J. Lodge, Toledo, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

R. CLARKE VANDERVORT, United States Magistrate Judge.

Pending are Plaintiff's Motion to Compel Relevant Deposition Testimony (Document No. 166.) and Defendants' Cross–Motion to Preclude Irrelevant Deposition Questioning and for Protective Order (Document No. 167.). Having considered the parties' Motions and determined that the information which Plaintiff would compel Defendants to provide is not relevant to the parties' claims and defenses and in any event may not be compelled in view of Defendants' First and Fifth Amendment rights, the Court will deny Plaintiff's Motion to Compel and grant Defendants' Cross–Motion to Preclude it and for a Protective Order.

### BACKGROUND

On January 25, 2010, Plaintiff, a West Virginia corporation [1] engaged in the mining of coal at the Beetree Surface Mine in Raleigh County, West Virginia, filed a Verified Complaint, a Motion for Temporary

---

**1.** Plaintiff states that it is a subsidiary of A.T. Massey Coal Company Inc., and A.T. Massey Coal Company Inc., is owned by Massey Energy Company.

Restraining Order and Preliminary Injunction and a Memorandum in Support. (Document Nos. 1, 4, 5 and 8 (Verification of Mr. Michael Bayes, Plaintiff's Director of Security).) By its Verified Complaint (Document No. 1.), Plaintiff alleged that Defendants, members of Climate Ground Zero, Mountain Justice and other environmental groups, unlawfully trespassed upon the Beetree Surface Mine property beginning on January 21, 2010, in protest of mountaintop mining. Plaintiff alleged that as members of these environmental groups, "Defendants themselves and others acting in concert and participating with them, advocate the abolition of mountaintop mining and oppose such mining by corporate entities affiliated with A.T. Massey and Massey Energy." (*Id.,* ¶ 24.) Plaintiff alleged that "[u]pon information and belief, Defendants' intentional and unlawful activities of January 21, 2010, and continuing thereafter, have been orchestrated by themselves and others acting in concert and participating with them so as to be photographed and videotaped so that recordings and/or images can be published and/or uploaded to various websites...." (*Id.,* ¶ 25.) Plaintiff further alleged in requesting injunctive relief that "upon information and belief, Defendants and others acting in concert and participating with them have represented that they will continue to intentionally and unlawfully come onto the Beetree Surface Mine, and other A.T. Massey and Massey Energy affiliated properties, until all mountaintop mining operations cease...." (*Id.,* ¶ 35.) Plaintiff alleged that the West Virginia State Police arrested Defendants Graupera and Rozendaal and Defendants Smith, Nitchman and Blevins evaded arrest by climbing trees on the property and two of them remained on the property when Plaintiff initiated this matter. Plaintiff alleged that Defendants' actions placed them, Plaintiff's employees and contract personnel in danger and interfered with Plaintiff's business operations on the property causing Plaintiff irreparable harm and would continue to do so unless their actions were enjoined. Plaintiff claimed therefore that Defendants trespassed upon its property[2], tortiously interfered with its contractual obligations and production of coal[3] and conspired to engage in the tortious actions for the purpose of interfering with Plaintiff's business operations.[4] Plaintiff requested, among other things, that the District Court enjoin Defendants and their associates from "(a) Trespassing or otherwise congregating on any of the mining properties of corporate entities affiliated with A.T. Massey and Massey Energy, including but not limited to the Marfork's Beetree Surface Mine property in Raleigh County, West Virginia; and (b) Interfering, obstructing, blocking, impeding or tampering with any coal operating equipment, trucks or other vehicles of any of the corporate entities affiliated with A.T. Massey and Massey Energy, including but not limited to Marfork, no matter where such equipment, trucks or other vehicles may be located." Plaintiff also requested compensatory and punitive damages.

The District Court held an evidentiary hearing upon Plaintiff's Motion for Tempo-

---

**2.** To prove that Defendants trespassed upon its property, Plaintiff must establish that they went on Plaintiff's property without invitation for their own purpose and not in the performance of any duty to Plaintiff. *Huffman v. Appalachian Power Company,* 187 W.Va. 1, 4, 415 S.E.2d 145, 148, (1991).

**3.** To prove that Defendants tortiously interfered with its contractual obligations, Plaintiff must establish (1) the existence of a contractual or business relationship or expectancy, (2) an intentional act of interference of Defendants as persons outside the relationship or expectancy, (3) the interference caused harm and (4) damages. *Hatfield v. Health Management Associates of West Virginia,* 223 W.Va. 259, 267, 672 S.E.2d 395, 403 (2008).

**4.** To prove that Defendant conspired to engage in a tortious action for the purpose of interfering with Plaintiff's business operations, Plaintiff must establish that two or more of the Defendants in combination committed a wrongful act or a lawful act in an unlawful manner causing Plaintiff harm. *Dunn v. Rockwell,* 225 W.Va. 43, 689 S.E.2d 255, 268–269 (2009). The elements of a civil conspiracy claim are met therefore when it is proven that (1) two or more people who are named as defendants (2) agreed to commit overt tortious act(s) for a common purpose (3) committed the overt tortious act(s)(4) proximately causing Plaintiff harm.

rary Restraining Order and Preliminary Injunction on January 26, 2010 (Document No. 11.), and filed a Memorandum Opinion and Order and an Order Granting in part Plaintiff's Motion for Temporary Restraining Order on January 27, 2010 (Document Nos. 12 and 13.). Applying the standard which the United States Supreme Court announced in *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.") and the Fourth Circuit Court of Appeals has recently adopted in *The Real Truth About Obama v. Federal Election Commission,* 575 F.3d 342, 346–347 (4th Cir.2009), *judgment vacated,* —— U.S. ——, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010), the District Court determined that Plaintiff met each of the components of the standard and ordered as follows (Document No. 13.):

Defendants and their officers, agents, servants, employees, and attorneys, and those other persons who are in active concert or participation with Defendants (or their officers, agents, servants, employees or attorneys), who receive actual notice of this Temporary Restraining Order by personal service or otherwise are hereby restrained and enjoined until **February 10, 2010, at 3:00 p.m.** from doing or causing to be done, the following:

(a) Trespassing or otherwise congregating on any mine properties in the Southern District of West Virginia, including but not limited to Marfork's Beetree Surface Mine property in Raleigh County, West Virginia; and

(b) Interfering, obstructing, blocking, impeding or tampering with any coal operating equipment, trucks or other vehicles of any mining properties, including but not limited to Marfork, no matter where such equipment, trucks or other vehicles may be

located in the Southern District of West Virginia.

The District Court further ordered that its Order be served upon Defendants, the Court would hold a hearing upon Plaintiff's Motion for Preliminary Injunction on February 4, 2010, and its Order would become effective when Marfork posted a $100,000 bond.

By Order filed on February 4, 2010, the District Court extended its Temporary Restraining Order until February 24 and scheduled the hearing upon Plaintiff's Motion for Preliminary Injunction on February 23, 2010. (Document No. 29.) On February 23, 2010, the District Court held a hearing upon Plaintiff's Motion for Preliminary Injunction (Document No. 38.) and extended the Temporary Restraining Order until February 26, 2010. (Document No. 39.) On February 26, 2010, the District Court filed a Memorandum Opinion and Order and an Order Granting Preliminary Injunction. (Document Nos. 43 and 44.)

On March 2, 2010, Defendants filed their Answer and Affirmative Defense. (Document No. 47.) Defendants admitted the allegations in Plaintiff's Verified Complaint pertaining to their residency and therefore diversity of citizenship, venue and the location of the Beetree Surface Mine. Defendants, however, denied allegations pertaining to the required amount necessary for diversity jurisdiction. Defendants refused to answer most of Plaintiff's allegations pertaining to their conduct on January 21, 2010, asserting their privilege under the Fifth Amendment of the United States Constitution. (*Id.,* ¶¶ 19–23, 40–42.)[5] Defendants asserted as their first affirmative defense "the moral imperative ... to protect the environment for future generations which governs any and all actions which they have taken." Defendants further asserted in defense the pollution, destruction of future resources and local and regional heritage, threat to health, morals, safety, comfort, convenience and welfare and nuisance caused by Plaintiff's illegal mining operations.[6] On June 17, 2010, Defendants filed

---

**5.** It appears that upon their arrest, Defendants were charged with trespass and several of them have pled guilty to the charge. *See* Document Nos. 58, ¶ 1 and 166, Exhibit A, p. 14.

**6.** Defendants in actions arising out of acts of civil

their Amended Answer and Affirmative Defense.[7] (Document No. 57.) Defendants' amended answers to the allegations contained in Plaintiff's Complaint are basically the same as those which Defendants stated initially.

## THE PARTIES' POSITIONS

Previously, considering the parties' Motions to Compel and for Protective Orders respecting written discovery, the undersigned filed a Memorandum Opinion and Order on January 13, 2011, denying their Motions, and closing the time for written discovery but permitting Plaintiff to take the depositions of Defendants until January 27, 2011. (Document No. 151; *Marfork Coal Co., Inc. v. Smith*, 2011 WL 111880 (S.D.W.Va.)) The undersigned wrote that "Plaintiff may inquire respecting whether and how the Defendants know each other and planned, convened and executed their plan to protest mountaintop removal mining on its Beetree Surface Mine site in January, 2010. Plaintiff may inquire very narrowly and by leading question only respecting their membership or affiliation with Climate Ground Zero or any other organization advocating against mountaintop removal mining. Plaintiff may not inquire respecting any offices or positions which Defendants may hold in such organization, the organization's training or recruiting practices, Defendants' acquaintances within those organizations who are not Defendants herein or protests at other mine sites. * * * Defendants have indicated that they would like to take the depositions of one of Plaintiff's officers and its expert witness. Defendants shall complete these depositions by January 27, 2011, as well." *Marfork Coal Co., Inc. v. Smith*, 2011 WL 111880, *12 (S.D.W.Va.).

On January 14, 2011, Plaintiff's attorney began the deposition of Defendant Ms. Amber Nitchman in the undersigned's conference room as Ms. Nitchman and her attorney were expected to object and assert privileges in response to Plaintiff's attorney's questioning and the Court's assistance might be necessary.[8] At the start of Ms. Nitchman's deposition, indicating concern that Ms. Nitchman and others could be prosecuted under 18 U.S.C. § 2331 and *W.Va.Code* § 61–6–24 pertaining to terrorism, her attorney made it clear that he intended to advise her to assert her Fifth Amendment right against self-incrimination to questions "beyond the scope of her trespass and her reasons." Plaintiff's counsel stated that he had a copy of an article indicating that a number of people who are not named as Defendants assisted in the planning and carrying out of the Defendants' trespass upon Plaintiff's property in January, 2010, and indicated that he intended to inquire respecting the other people and their roles. In response to questioning during her deposition, Ms. Nitchman indicated that in January, 2010, she moved from Pennsylvania to Rock Creek, West Virginia, "to combat mountaintop removal mining." She indicated that the other Defendants were living there then. She acknowledged that she trespassed on Plaintiff's property with other people including the other Defendants and took a position in a tree. Plaintiff's

disobedience often allege justification or necessity as a defense contending that their unlawful actions in protest of allegedly unlawful or ineffective policies or programs of the Government were morally justified and there was no other reasonable alternative. As it must be proven that there was no other reasonable alternative to engaging in unlawful actions, the defense is difficult to establish. *See United States v. Greenpeace, Inc.*, 314 F.Supp.2d 1252, 1265–1266 (S.D.Fla. 2004); *United States v. Moylan*, 417 F.2d 1002, 1008–1009 (4th Cir.1969).

7. Defendants' Amended Answer and Affirmative defense included a Counterclaim charging that Plaintiff engaged in outrageous conduct, intentional and/or negligent infliction of emotional distress and harassment by "using loud noise and bright lights to deprive them of needed sleep, and to harass them" causing "both physical discomfort and mental distress as was planned by plaintiff. Said behavior constitutes the tort of outrage." On July 1, 2010, Plaintiff filed a Motion to Dismiss Defendants' Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and a Memorandum in Support. (Document Nos. 58 and 59.) Defendants opposed it. (Document No. 62.) By Memorandum Opinion and Order filed on February 23, 2011, the District Court granted Plaintiff's Motion to Dismiss Defendants' Counterclaim. (Document No. 183.)

8. A copy of the transcript of Ms. Nitchman's deposition is attached to Plaintiff's Motion to Compel (Document No. 166.) as Exhibit A.

attorney asked Ms. Nitchman respecting who she lived with at Rock Creek, West Virginia, and whether other people who went on Plaintiff's property with her and helped her carry supplies and set her platform up in the tree. Ms. Nitchman's attorney objected to these inquiries as beyond the scope of questioning which the undersigned had authorized. Discussions took place both on and off the record about Plaintiff's questioning and Ms. Nitchman's objections during which the undersigned was informed that State Courts had issued injunctions against persons other than Defendants in this matter. Plaintiff asserted that those other persons may have recruited Defendants to engage in their trespass upon Marfork's property when they were enjoined from doing so. Having this information, the undersigned authorized Plaintiff's counsel to inquire of Ms. Nitchman respecting people who were subject to injunctions in State Court proceedings and participated in the planning of the Defendants' trespass upon Plaintiff's property in January, 2010. Ms. Nitchman's attorney objected and requested a stay of the deposition which the undersigned reluctantly granted.

On January 28, 2011, Plaintiff filed a Combined Motion to Compel Relevant Deposition Testimony and Supporting Memorandum of Law. (Document No. 166.) Plaintiff attached a copy of the transcript of Ms. Nitchman's deposition, a February 9, 2010, article entitled "Fighting for Mountain Justice in Appalachia", a July 17, 2009, Order Granting Preliminary Injunction of the Circuit Court of Raleigh County in *Alex Energy, Inc., et al. v. Antrim Laura Caskey, et al.*, Civil Action No. 09–C–187–B, a July 9, 2009, Order Granting Preliminary Injunction of the Circuit Court of Boone County in *Independence Coal Company, Inc., et al. v. Lynn D. Stone, et al.*, Civil Action No. 09–C–145, and an August 31, 2009, Complaint in the Circuit Court of Raleigh County in *Alex Energy, Inc., et al. v. Laura Steepleton, et al.*, Civil

Action No. 09–C–805–B.[9] Plaintiff requests that the Court order Defendants "to provide relevant deposition testimony regarding 'people, especially those who are parties in other civil actions and have been enjoined from trespassing on Massey properties, who participated in the planning and execution of the trespass upon and occupation of Marfork's Bee Tree Surface Mine property.'" (*Id.*, p. 1.) Citing decisions of the Fourth Circuit and West Virginia Supreme Court of Appeals indicating that persons who aid and abet trespass are as liable as those who commit it, Plaintiff asserts that information about others who assisted Defendants in their trespass is therefore relevant to the claims or defenses herein or may lead to the discovery of admissible evidence and those others who did so are witnesses to the circumstances underlying this action. (*Id.*, pp. 12–14.) Respecting Ms. Nitchman's objection based upon the Fifth Amendment and the possibility of her prosecution under 18 U.S.C. § 2331 and *W.Va.Code* § 61–6–24, Plaintiff contends that Ms. Nitchman must demonstrate that the possibility of her prosecution is substantial and real and she has not done so. (*Id.*, p. 9, fn. 8.) Plaintiff further indicates that Ms. Nitchman, a Climate Ground Zero member, cannot claim any First Amendment right of association privilege when information on the internet established that she was a member and was acting as a member when she trespassed upon Plaintiff's property in protest of mountaintop removal mining in January, 2010. (*Id.*, p. 13, fn. 10.) Finally, Plaintiff states that "[t]he deposition testimony regarding those individuals who participated in the planning and execution of the trespass upon and occupation of Marfork's Beetree Surface Mine property will aid Marfork in its ability to hold responsible those individuals who continue to defy the law." (*Id.*, p. 15.)

On February 4, 2011, Defendants filed a Cross–Motion to Preclude Irrelevant Deposi-

**9.** The July 9, 2009, Raleigh County Order Granting Preliminary Injunction enjoined "Defendants, and any persons or entities acting as agents of or in concert with the named Defendants who receive actual notice of the Preliminary Injunction Order by personal service or otherwise ... from ... (a) Trespassing or otherwise congregating on any of the Plaintiff's min-

ing properties, including but not limited to the Beetree Surface Mine property...." The Orders Granting Preliminary Injunctions in Raleigh and Boone Counties provided that Defendants and persons acting as their agents or in concert with them in violation of the injunctions would be subject to a civil penalty and/or criminal contempt proceedings.

tion Questioning and for Protective Order and Memorandum in Support. (Document Nos. 167 and 168.) Defendants indicate that Plaintiff's assertion that information is relevant respecting the support and participation of persons other than Defendants in their January, 2010, trespass upon Plaintiff's property is based upon the Fourth Circuit Court of Appeals statement "as a general rule" that persons who aid and abet trespass are as liable as those who commit it. Defendants urge that an exception to the general rule exists when the trespass is an act of civil disobedience as First Amendment rights are implicated. (Document No. 168, p. 2.) Similarly, Defendants contend that an exception exists respecting such information in the context of civil conspiracy as well. Defendants state that "where the aim of the scheme is civil disobedience, those who 'shared a common plan' with the actual perpetrators who were not themselves personally the perpetrators of the civilly-disobedient acts, have simply engaged in First Amendment-protected activity. They have a right of anonymous association with those who actually commit acts of civil disobedience." (*Id.*, p. 6.) Defendants dispute Plaintiff's contention that information on the internet about Defendants' and others' affiliation with Climate Ground Zero amounts to the waiver of their First Amendment right of association privilege citing *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). (*Id.*, pp. 7–8.) Defendants state that "[f]orced disclosure of one's association membership with, and contributions to, an organization historically have been recognized as having a chilling effect on First Amendment rights." (*Id.*, p. 8.) Citing numerous Court decisions and quoting from some, Defendants assert that since *NAACP v. Alabama*, Courts have consistently recognized a privilege against compelled disclosure of information respecting associations with others under the First Amendment. (*Id.*, pp. 8–16.) Thus, Defendants contend that the information which Plaintiff requests is irrelevant and constitutionally protected. (*Id.*, p. 12.) Defendants also claim as they did during the deposition of Ms. Nitchman that they may assert their Fifth amendment right against self-incrimination in response to Plaintiff's

questioning as they could be prosecuted under 18 U.S.C. § 2331 and *W.Va.Code* § 61–6–24 pertaining to terrorism. (*Id.*, pp. 16–19.) Defendants further cite "the prospect that intrusive questions concerning the relationships of persons enjoined by three courts' injunctions may tend to incriminate the Defendants for criminal contempt purposes." (*Id.*, p. 19.)

On February 11, 2011, Plaintiff filed a Combined Reply in Support of its Motion to Compel and Response in Opposition to Defendants' Cross–Motion. (Document No. 179.) Plaintiff asserts that as Defendants are charged with trespassing on Plaintiff's private property, no privileges apply to protect them against providing information about others who assisted and participated with them in the trespass and even if privileges exist, Defendants have waived them as detailed information about the trespass has been made publicly available. (*Id.*, pp. 1–2.) Plaintiff reiterates that the general rule of trespass provides that people who participate in the planning of a trespass are as liable as those who actually commit the act of trespass on private property for the damages which follow. Plaintiff disputes Defendants' contention that they engaged in civil disobedience in occupying Plaintiff's property in January, 2010, and states that they trespassed on it. (*Id.*, p. 3.) Citing *Adderley v. State of Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) and *Lloyd Corp. Ltd. v. Tanner*, 407 U.S. 551, 568, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1972), Plaintiff asserts that "[t]he Supreme Court has clearly stated that there is no First Amendment Privilege to trespass on private property to engage in some asserted type of 'civil disobedience.'" (*Id.*, pp. 3–4.) Plaintiff asserts that information about others who participated in the planning and execution of the trespass besides Defendants is relevant to Plaintiff's civil conspiracy claim and publicly available reports indicate that persons with Climate Ground Zero conducted reconnaissance and resupply missions in the planning of the trespass and support of those who committed it. (*Id.*, pp. 5–6.) Plaintiff reiterates that "the deposition testimony regarding those individuals who participated in the planning and execution of the trespass upon and occupa-

tion of Marfork's Beetree Surface Mine property will aid Marfork in its ability to hold responsible those individuals who continue to defy the law." (*Id.*, p. 6.) Respecting Defendants' First Amendment claim, Plaintiff states that the privilege does not apply to persons and organizations who are not parties to this matter and are involved in illegal acts. (*Id.*, pp. 7–8.) Plaintiff further asserts that Defendants have not and cannot make a *prima facie* showing that their First Amendment right of association will be infringed if they are required to provide information about others who assisted and participated with them in the January, 2010, trespass. (*Id.*, pp. 8–10.) Respecting Defendants' Fifth Amendment claim, Plaintiff asserts that "Defendants provide no legitimate factual or legal basis regarding how their relevant testimony could lead to a substantial and real threat of future prosecution ... or how they can assert the Fifth Amendment related to other civil injunction cases." (*Id.*, p. 11.) Plaintiff argues that Defendants' general assertion of their Fifth Amendment privilege respecting questioning about the participation of others in their January, 2010, trespass is improper as the privilege must be asserted in response to specific questions. (*Id.*, p. 12.) Plaintiff further contends quoting Ms. Nitchman's testimony that Defendants have waived their Fifth Amendment privilege respecting questioning about their January, 2010, trespass upon Plaintiff's property to the extent that they "have voluntarily revealed specific information detailing their trespass...." (*Id.*, pp. 12–15.) Finally, addressing Defendants' argument that they could be prosecuted under 18 U.S.C. § 2331 and *W.Va.Code* § 61–6–24 or become subject to criminal contempt proceedings under injunctions issued by other Courts, Plaintiff states that Defendants have not demonstrated how their responses to questioning about the participation of others in their January, 2010, trespass could subject Defendants to prosecution under those provisions. (*Id.*, p. 16.) Plaintiff states further that Defendants could not be subject to prosecution for criminal contempt under the injunction orders in Raleigh and Boone Counties because the intent of the Raleigh County injunction order was to protect Plaintiff's property and not prosecute anyone and so any transgression would be civil, not criminal, contempt and "Defendants relevant testimony would not implicate them in a future trespass in Boone County." (*Id.*, pp. 17–19.)

On February 18, 2011, Plaintiff filed a Supplement in Support of its Motion to Compel and Response in Opposition to Defendants' Cross–Motion. (Document No. 180.) Plaintiff points out that Defendants Nitchman's, Blevins' and Smith's Affidavits were attached to Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment with respect to Defendants' Counterclaim. (Document No. 173.) Plaintiff urges that "Since Defendants Smith's, Nitchman', and Blevins's affidavits voluntarily revealed specific information detailing their trespass on Marfork's Beetree Surface Mine property, they waived their Fifth Amendment privilege relating to relevant testimony regarding any and all people, especially those who are parties in other civil actions and have been enjoined from trespassing on Massey properties, who participated in the planning and execution of the trespass upon and occupation of Marfork's Beetree Surface Mine Property."

On February 18, 2011, Defendants filed a Reply Memorandum in Support of their Cross–Motion. (Document No. 181.) Defendants refer to and quote from a Pennsylvania Intelligence Bulletin issued by the Pennsylvania State Department of Homeland Security discussing two acts of civil disobedience committed by members of Climate Ground Zero and rating the acts as a "Low–to–Moderate" threat. Defendants further indicate that the Intelligence Bulletin contained an "extract" from an FBI Bulletin referring to Climate Ground Zero as a group of "environmental extremists" and predicting that the group would "continue to commit criminal activity." Defendants claim that Plaintiff is using civil discovery to gather information which it will turn over to the FBI encouraging prosecution. (*Id.*, pp. 3–5.) Addressing Plaintiff's assertion that they have waived their Fifth Amendment privilege, Defendants dispute the application of cases which Plaintiff cites in support of its position. Defendants argue that the privilege is not waived

by "writing or speaking about the wrongdoing in unsworn circumstances[.]" (*Id.*, p. 6.) Defendants contend that they can assert the privilege "to avoid ... being implicated in criminal contempt problems under the state court injunction in *Alex Energy v. Caskey* (Plaintiff's Exh. C, Doc. No. 166–3), which enjoins trespass on the Beetree Surface Mine by persons having notice of that preliminary injunction...." (*Id.*, p. 7.)

## DISCUSSION

### 1. *Relevancy.*

■■■ The threshold consideration in resolving any dispute respecting information which a party is seeking in discovery is whether the information is within the scope of discovery as contemplated by Federal Rule of Civil Procedure 26(b)(1). That Rule provides as follows respecting the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Rule 26(b)(1) envisions two levels of relevancy—relevancy to any party's claims or defenses and relevancy to the subject matter involved in the action. Relevancy to claims or defenses is narrower than relevancy to subject matter as is evident from the Advisory Committee Notes. In amending this Rule in 2000, the Advisory Committee wrote as follows:

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

Relevant matters are therefore ones which relate to a party's claim or defense and include information about persons who know of such relevant matters. Relevancy does not extend more broadly to the subject matter of the action unless the Court orders it upon a finding of good cause. Discovery may therefore not be had of information about persons who know of the subject matter involved in the action but not of matters which relate to any party's claim or defense. Upon this framework, relevancy is conceptually broad.

Information is relevant if there is any possibility that it might relate to a claim or defense of any party. When requested information appears relevant, the party objecting to providing it must demonstrate that the information has no bearing upon a claim or defense of any party or circumstances contemplated by Rule 26(b)(2)(C) exist. *See Desrosiers v. MAG Industrial Automation Systems, LLC,* 675 F.Supp.2d 598, 601 (D.Md.2009). Rule 26(b)(2)(C) provides that the Court is required to impose limitations upon the frequency or extent of discovery within the scope of Rule 26(b)(1) as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance if the discovery in resolving the issues.

"District Courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." *Hinkle v. City of Clarksburg, West Virginia,* 81 F.3d 416, 426 (4th Cir.1996).

 Is information about other members of Climate Ground Zero who participated with or assisted Defendants in the January, 2010, trespass upon Plaintiff's property relevant to the claims and defenses of the parties or more broadly to the subject matter of this proceeding? Considering the elements of Plaintiff's claims of Defendants' trespass, tortious interference with Plaintiff's contractual relationships and business operation and civil conspiracy as noted above and Defendants' justification defense, it is clear that the information has no direct substantive bearing upon Plaintiff's claims or Defendants' defense. Rather, the information which Plaintiff is seeking to compel has to do generally with the subject matter of this action, i.e., the protest of mountaintop mining by occupying Plaintiff's Beetree Surface Mine property in January, 2010. The information may therefore not be had without Plaintiff's showing of good cause, and Plaintiff has not made such a showing. Respecting Plaintiff's claim that others who participated with and assisted Defendants in their January, 2010, trespass upon Plaintiff's property are witnesses, those persons may have information relevant to Plaintiff's claims, but the information is cumulative as it appears from Ms. Nitchman's deposition that Defendants are basically willing to admit that they acted together in trespassing upon Plaintiff's property then. Plaintiff therefore does not need the information about the other persons to prove its claims against Defendants. Plaintiff also indicates that the information about others persons who participated with or assisted Defendants would be useful in the development of further claims against them in other Court proceedings, but according to the Advisory Committee Notes quoted above, Plaintiff may not have the information for this purpose. The information which Plaintiff seeks does not fall within the allowable scope of discovery in this matter. Having reached the conclusion that the information which Plaintiff seeks falls outside the allowable scope of discovery, the Court will nevertheless consider Defendants' assertions of First and Fifth Amendment rights as the information appears to be related to the subject matter of this action.

## 2. *First Amendment Rights.*

 The First Amendment of the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." It is clear that the First Amendment protects speech which advocates unlawful conduct unless "such advocacy is directed to inciting or producing imminent lawless action

and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969); *See also White v. Lee*, 227 F.3d 1214, 1227–1228 (9th Cir.2000) ("Peaceful speech, even speech that urges civil disobedience, is fully protected by the First Amendment."). Freedom of speech being combined in one sentence with the right of assembly, the two are inseparable. *McDonald v. Smith*, 472 U.S. 479, 485, 105 S.Ct. 2787, 2791, 86 L.Ed.2d 384 (1985). The First Amendment therefore establishes the right to associate with others and organize in protest of the policies and programs of the Government. It applies in the context of discovery as a qualified privilege against disclosure of information when the party asserting the privilege demonstrates that the disclosure would likely impair the associational activities of the group. *NAACP v. Alabama*, 357 U.S. 449, 462–463, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958)("Petitioner has made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility. Under these circumstances, we think it apparent that compelled disclosure of petitioner's Alabama membership is likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate, in that it may induce members to withdraw from the Association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure."); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir.1987). The privilege applies to organizations and their members. *International Union, UAW v. National Right to Work Legal Defense & Education Foundation, Inc.*, 590 F.2d 1139, 1147 (D.C.Cir.1978). The party asserting the privilege must demonstrate that the privilege applies and that compelled disclosure will chill associational rights and activities. *In re Motor Fuel Temperature Sales Practices Litigation*, 707 F.Supp.2d 1145, 1152–1153 (D.Kan.2010). Courts have established a balancing test for determining whether information falling under the privilege should nevertheless be compelled. *Grandbouche v. Clancy*, 825 F.2d at 1466 (10th Cir.1987)("Among the factors that the trial court must consider are (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information. The trial court must also determine the validity of the claimed First Amendment privilege. Only after examining all of these factors should the court decide whether the privilege must be overborne by the need for the requested information." (Citation omitted.).)

█ In deposing Defendants, Plaintiff intends to inquire respecting other members of Climate Ground Zero who assisted or participated with Defendants in the January, 2010, occupation of Plaintiff's property. Presumably, Plaintiff would inquire respecting the identities of the others and their roles in the occupation of Plaintiff's property. Plaintiff indicates that the information gained from its inquiry would aid it in holding the other members of Climate Ground Zero responsible for their further activities against which they were enjoined. Clearly, the information which Plaintiff seeks concerns the members and associational activities of Climate Ground Zero. Courts have consistently found that information respecting the identities of other members of groups organized to conduct protests falls under the First Amendment privilege. *International Action Center v. United States*, 207 F.R.D. 1, 3–4 (D.D.C.2002). It is evident that disclosure of the information which Plaintiff seeks may have a chilling effect upon the membership and associational activities of Climate Ground Zero and other environmental groups. Plaintiff states that it intends to use the information "to hold responsible those individuals who continue to defy the law." Plaintiff asserts that this includes all persons who aid and abet the law breakers. It would appear therefore that Plaintiff intends to sue other persons who assisted or participated with Defendants in the January, 2010, protest or encourage civil or criminal contempt proceedings against them for violation of State Court injunctions.

Knowing that they might be sued or charged, many who support the positions of Climate Ground Zero and other environmental groups opposing mountaintop mining and would actively and lawfully protest it would not do so. Defendants have therefore stated a valid First Amendment claim such that the information which Plaintiff seeks is protected against disclosure under the First Amendment unless Plaintiff has demonstrated a compelling need for it. Considering the *Grandbouche* factors, the information is not relevant to the claims and defenses of the parties. Plaintiff does not need the information to prove its case, and Plaintiff has obtained some general information from other sources that others participated with and assisted Defendants in the January, 2010, protest. Plaintiff does not have a compelling need for the information, and the First Amendment privilege therefore prevails.

### 3. *Fifth Amendment Rights.*

The Fifth Amendment of the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." The Supreme Court has recognized that the Fifth Amendment may be asserted in response to a deposition question in a civil case when the answer to the question might incriminate the deponent in a future criminal proceeding. *Kastigar v. United States*, 406 U.S. 441, 444–445, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972)(The Fifth Amendment privilege "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."); *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973)(The Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answer might incriminate him in future proceedings.") The privilege "does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness v. Meyers*, 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975). The mere assertion of the privilege against self-incrimination in response to questioning does not *ipso facto* prohibit the questioning. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)("The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination."); *United States v. Sharp*, 920 F.2d 1167, 1170 (4th Cir.1990). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. at 486–487, 71 S.Ct. at 818. The incriminating potential may be facially or contextually evident. *United States v. Sharp*, 920 F.2d at 1170. "[T]he reasonableness of the claimed apprehension should simply be assumed once incriminating potential is found, unless there are genuine questions about the government's legal ability to prosecute. That is to say, once incriminating potential is found to exist, courts should not engage in raw speculation as to whether the government will actually prosecute." *Id.,* at p. 1171.

"Where incriminating facts have been voluntarily revealed, the fifth amendment privilege may not then be invoked to avoid disclosure of the details." *Environmental Defense Fund, Inc., v. Lamphier*, 714 F.2d 331, 339 (4th Cir.1983), *citing Rogers v. United States*, 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951); *see also Brown*

*v. United States,* 356 U.S. 148, 155–156, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958). "An affidavit operates like other testimonial statements to raise the possibility that the witness has waived the Fifth Amendment privilege." *In re Edmond,* 934 F.2d 1304, 1308 (4th Cir.1991). "The privilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of relevant cross-examination[.]' " *Mitchell v. United States,* 526 U.S. 314, 321, 119 S.Ct. 1307, 1312, 143 L.Ed.2d 424 (1999), *quoting Brown v. United States,* 356 U.S. at 154–155, 78 S.Ct. 622. "Waiver of constitutional rights, however, is not to be lightly inferred." *Smith v. United States,* 337 U.S. 137, 150, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264 (1949). "[T]he courts must 'indulge every reasonable presumption against waiver of fundamental constitutional rights.' " *Emspak v. United States,* 349 U.S. 190, 198, 75 S.Ct. 687, 692, 99 L.Ed. 997 (1955), *quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

 Several of the Defendants have pled guilty to trespass charges in State Court and have waived their Fifth Amendment right against self-incrimination respecting the relevant facts and circumstances underlying those charges. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969)("Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment. . . .") Having admitted criminal trespass, Defendants are apparently willing to admit that they trespassed upon Plaintiff's property in this civil matter. But Defendants have not waived their Fifth Amendment right with respect to other charges which could be lodged against them. While Defendants' notion that they could be prosecuted under 18 U.S.C. § 2331 and *W.Va.Code* § 61-6-24 as domestic terrorists is not substantial and real as Defendants appear to concede that they engaged in nonviolent, albeit unlawful, activities in protest of governmental policies and programs which allow mountaintop removal mining, it nevertheless appears that Defendants could be charged with criminal con-

tempt of the July 9, 2009, Raleigh County Circuit Court injunction against trespassing on Plaintiff's Beetree Surface Mine property if it becomes evident that they had actual notice of the injunction order. Disclosing that persons who assisted and participated with them in the January, 2010, trespass upon Plaintiff's property were subject to the earlier injunction against trespassing on Plaintiff's Beetree Surface Mine property could be some evidence that Defendants knew of the injunctions and nevertheless proceeded with their trespass making their prosecution for criminal contempt more likely. *State ex rel. Mineral State Coal Co. v. Komar,* 113 W.Va. 526, 168 S.E. 810, 811 (1933)("The general rule is that one who violates an injunction is guilty of contempt, although he is not a party to the injunction suit, if he has notice or knowledge of the injunction order, and is within the class of persons whose conduct is intended to be restrained, or acts in concert with such a person.") Because there is incriminating potential in Defendants' responses to Plaintiff's specific questions respecting others who assisted or participated with them in the January, 2010, trespass upon Plaintiff's property, Defendants assertion of their right under the Fifth Amendment and refusal to answer Plaintiff's questions is sustained.

For all of the foregoing reasons, it is hereby **ORDERED** that Plaintiff's Motion to Compel Relevant Deposition Testimony (Document No. 166.) is **DENIED** and Defendants' Cross–Motion to Preclude Irrelevant Deposition Questioning and for Protective Order (Document No. 167.) is **GRANTED.** In deposing Defendants, Plaintiff may not inquire specifically respecting other persons who assisted or participated with Defendants in any way prior to, during or after their January, 2010, occupation of Plaintiff's Beetree Surface Mine property.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.